[Civ. No. 20376.   Second Dist., Div. Three.   Jan. 25, 1955.]

MARTHA PERRY et al., Appellants, v. CITY OF SANTA MONICA, Respondent.

Stanley Fleishman and Brock, Easton & Fleishman for Appellants.

Robert G. Cockins, City Attorney, Mark C. Allen, Jr., Assistant City Attorney, and Robert D. Ogle, Deputy City Attorney, for Respondent.

VALLÉE, J.—Appeal by plaintiffs from a judgment in favor of defendant city of Santa Monica entered on the sustaining of a demurrer to the first amended complaint, referred to as the complaint, without leave to amend.

The complaint alleges:

On April 1, 1953, at 7:40 a. m., plaintiffs were passengers in an automobile driven by Aleck Penny who was traveling north on Euclid Avenue near Michigan Avenue in Santa Monica. At the same time, Joann Cesario negligently drove an automobile west on Michigan Avenue and collided with the automobile being driven by Penny. As a proximate result of such negligence plaintiffs were injured.

At the time of the accident the intersection of Euclid and Michigan Avenue was in a dangerous and defective condition. It was so laid out, constructed, and maintained that a "vehicle" traveling northerly on Euclid could not see traffic approaching from the west on Michigan without first entering the intersection and placing "itself" in a hazardous position and a "vehicle" traveling westerly on Michigan could not see traffic approaching in a northerly direction on Euclid without first entering the intersection. It was a heavily traveled blind intersection and it did not have traffic signals, stop signs, semaphores, or other traffic control devices. Defendant city had knowledge, by way of petition of its citizens and otherwise, of the dangerous and defective condition of the intersection. Notwithstanding such knowledge, the city carelessly, negligently, and unlawfully refused and failed to place or maintain any appropriate stop or warning signs at the intersection. On or about the day of the accident, but subsequent thereto, the city placed stop signs at the intersection. The city waited an unreasonable length of time after having notice of the dangerous and defective condition of the intersection before installing the stop signs.

On information and belief plaintiffs allege that prior to April 1, 1953, the city had decided it was reasonably necessary to place stop signs at the intersection, and it waited an unreasonable length of time after so deciding before it actually installed the signs. Also on information and belief plaintiffs allege that preceding the accident there were many other accidents at the intersection caused by its dangerous condition. This was well known to the city and its governing board.

Under the Public Liability Act of 1923 (now Gov. Code, §§ 53050, 53051):

"A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition: (a) Had knowledge or notice of the defective or dangerous condition. (b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

█ The injuries must result from the dangerous or defective condition of public *property*. What is included in the term "property" was exhaustively considered by this court in *Bady* v. *Detwiler*, 127 Cal.App.2d 321 [273 P.2d 941]. In all of the cases cited relative to the question, the property was in existence at the time of the accident or had been in existence, and liability was incurred by the local agency because either the property was in a dangerous or defective condition or it was not maintained or replaced after it once had been in existence.

█ The governmental immunity which a city enjoys as a state agency can be taken away only by legislative enactment. (*Whiting* v. *City of National City*, 9 Cal.2d 163, 165 [69 P.2d 990]; *Van Dorn* v. *City & County of San Francisco*, 103 Cal.App.2d 714, 716 [230 P.2d 393]; 19 Cal.Jur. 126, § 461.) █ The Public Liability Act was not enacted for the purpose of protecting those who come upon city streets, but only those who sustain injuries by reason of a "dangerous or defective" condition. (*Shipley* v. *City of Arroyo Grande*, 92 Cal.App.2d 748, 750 [208 P.2d 51].) █ It has been repeatedly held that a city is not an insurer of the safety of travelers; it is required only to exercise ordinary care to maintain its streets in a reasonably safe condition for those using them. (*George* v. *City of Los Angeles*, 11 Cal.2d 303, 308 [79 P.2d 723].)

There is no allegation that irregularities, defects, or obstructions existed in the streets themselves. In *Belcher* v. *City & County of San Francisco,* 69 Cal.App.2d 457 [158 P.2d 996], it was held that the plaintiff had failed to state a cause of action against the city for personal injuries when she was blown over by a strong wind as she was descending steps cut by the city into the sidewalk, since she did not allege that there was anything dangerous or defective in the construction or design of the steps themselves or that there were any irregularities or defects such as holes, ridges, or upraises upon which a pedestrian might trip or by which one might be entrapped but merely alleged that the city was negligent in failing to provide a handrail and in not posting a warning sign.

*Stang* v. *City of Mill Valley,* 38 Cal.2d 486 [240 P.2d 980], was. an action against the city for damages sustained as a result of a fire on the plaintiffs' property. The water lines leading to the fire hydrant adjacent to the plaintiffs' property and the fire hydrant had become clogged and were incapable of providing sufficient water for effective fire control. The court observed (p. 489) :

"The ordinary case coming within the terms of this act involves a situation where the injured person is *using* some type of city property that is dangerous or defective, and · which he had a legal right to use, such as public streets [citation], highways [citation], buildings [citation], bridges [citation], school grounds [citation], or other similar property [citation]. Likewise the act sustains the imposition of liability in the situation where the city is *using* the dangerous or defective property and injury was proximately caused thereby: [citations], where the city negligently allowed a fire to spread from a city dump; [citation], where the city used defective sewer pipes, resulting in the flooding of plaintiffs' property; [citation], where the city negligently installed and maintained street drainage facilities, causing an overflow on plaintiffs' property with damage to the improvements thereon. But here the city did not create the fire causing the damage to plaintiffs' property; rather the claimed fault lies in defendants' failure to provide the means for remedying. a condition otherwise created—a different set of circumstances to which plaintiffs seek to apply the act in support of their action. Upon analysis, it clearly appears that the gravamen of plaintiffs' complaint is the failure of a governmental function. Such failure involves the denial of a benefit

owing to the community as a whole, but it does not constitute a wrong or injury to a member thereof so as to give rise to a right of individual redress (Restatement of Torts, § 288), which right must be predicated upon the violation of a duty of care owed to the injured party.''

Plaintiffs contend the city had the affirmative duty to erect boulevard stop signs at the intersection. They rely on section 465, subdivision (b) of the Vehicle Code which provides:

''Local authorities in their respective jurisdictions shall place and maintain or cause to be placed and maintained such traffic signs and, subject to the provisions of Section 466, such stop signs, semaphores and control devices upon streets and highways as may be necessary to indicate and to carry out the provisions of this code or local traffic ordinances or to regulate, warn or guide traffic.

Subdivision (a) of section 465 provides that the Division of Highways of the State Department of Public Works shall post such appropriate signs and signals ''with respect to highways under its jurisdiction'' as may be authorized under the code, ''or as may be necessary properly to indicate and to carry out the provisions of this code, or to direct or warn traffic upon the highways.'' Section 466 applies to state highways. Section 459 of the Vehicle Code provides that:

''The provisions of this division [which includes section 465] shall not prevent local authorities within the reasonable exercise of the police power from adopting rules and regulations by ordinance or resolution on the following matters: . . . (d) Regulating traffic by means of semaphores or other traffic control signaling devices.''

Section 471 provides that:

''[A]ny local authority . . . *may designate* any intersection under its exclusive jurisdiction as a stop intersection and erect like signs at one or more entrances thereto. (Italics added.)''

Subdivision (b) of section 465 does not compel local authorities to place signs or signals at a particular intersection. They are directed to place them upon streets and highways ''as may be necessary.'' Clearly the local authorities are to determine when a sign or signal is necessary at a particular intersection.

*Bradshaw* v. *City of Seattle*, 43 Wn.2d 766 [264 P.2d 265], is analogous. A Washington statute was substantially identical with subdivision (b) of section 465 of the Vehicle Code.

Construing the statute the Supreme Court of Washington said (264 P.2d 270, 271):

"Where a street itself is reasonably safe for public travel it is not rendered inherently dangerous solely because a municipality fails to cut down natural vegetation which tends to obstruct the view at an intersection. . . . In the absence of an express statute, a municipality cannot be held liable for failure to erect warning signs or barriers to apprise travelers of extraordinary or unusual conditions unless the danger existed in the highway itself."

■ A local authority is not liable under the Public Liability Act of 1923 for failure to install a stop sign at an intersection in the absence of a defective or dangerous condition in public property. We are not to be understood as holding that once having installed a stop sign a city may not be liable for failing to maintain it. (See *Rose* v. *County of Orange*, 94 Cal.App.2d 688 [211 P.2d 45].)

Plaintiffs, whose burden it is to show an actionable wrong, have cited no authority whatever where, under facts and circumstances at all comparable or similar to those alleged in their complaint, a municipality or any other local agency has been held liable. To hold that the city had the affirmative duty to erect stop signs at the intersection in question would unduly extend the scope of the Public Liability Law and go far toward establishing the rule that a municipality is an insurer. The trial court properly sustained the demurrer.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 25, 1955. Carter J., was of the opinion that the petition should be granted.