[Civ. No. 22029. Second Dist., Div. Three. May 9, 1957.]

ELIZABETH B. JOHNSON, Plaintiff, v. DON RICH et al., Defendants; DONALD REICHGOTT, Respondent; INTERNATIONAL AIRPORTS, INC. (a Corporation), Appellant.

A. J. Blackman for Appellant.

Goodstein, Moffitt & Rosen for Respondent.

SHINN, P. J.—Elizabeth B. Johnson, assignee of George Batchelor, Batchelor Enterprises and International Airports, Inc., recovered judgment against Don Reichgott, who calls himself Don Rich, and Ann Rich in the sum of $7,320.28 and attorney's fees, the balance unpaid on a promissory note, and a judgment against Don Rich and Fred A. Miller for $1,500

for services rendered. By the judgment Rich was awarded $7,700 upon his cross-complaint against appellant International Airports, Inc. The contentions on appeal all relate to claims of error in the trial of the issues raised by the cross-complaint of Rich and International's counterclaim to the cross-complaint.

The court determined that $7,700 was owing by International to Rich as compensation under an agreement by which International agreed to pay Rich $2.00 out of each $32 earned by International for the servicing of airplanes which Airline Ground Service brought to International for maintenance. (Rich and Airline were one and the same. Rich was the sole owner of Airline.) The court found that the agreement related to three transport airplanes, namely, Numbers N59483, N62528 and N1651M, the first two of which were operated by Air America, Inc., and the third by Paul Mantz Air Services. International charged for maintenance $32 for each hour a plane had been flown since the last servicing. The court found that the airplanes had been flown for a total of 3,850 hours and this finding is not questioned.

The answer to the cross-complaint alleged affirmative defenses. The first alleged that Rich "and his instrumentality, Airline Ground Service, Inc." were the agents of Air America, Inc.; America operated four aircraft; International maintained three of them for a charge of $32 per hour; Airline paid on behalf of America maintenance charges and was reimbursed by America. It was alleged that a fiduciary relationship existed between America and Airline. No question is presented on the appeal with respect to the second affirmative defense. By the third affirmative defense it was alleged that the agreement to pay Rich $2.00 for each hour of maintenance service on said planes was without consideration for the reason that International already had a written contract with America for maintenance of said aircraft. The fourth affirmative defense alleged that International had entered into a contract with one Fred A. Miller and Rich on the one hand, and International on the other, under which Rich and Miller agreed to furnish airplanes for maintenance service and that they had failed to perform the terms and conditions of said agreement for the reason that payment of $2.00 per hour of maintenance service was conditioned upon payment in full to International of all maintenance charges against the several aircraft. It was alleged that "said maintenance charges have never been paid."

International filed a counterclaim to the cross-complaint

alleging that on May 8, 1952, one Fred A. Miller and Rich were partners, that Miller, an agent of Rich, agreed to deliver certain planes to International for service, and claiming damages for failure of Rich and Miller to deliver planes as agreed. It was alleged that four aircraft were not delivered on the agreed dates and that a fifth (N53472) was not delivered at all. Damages were alleged in the sum of $13,644.

The points on appeal are the following: (1) Airline was the alter ego of Rich and the agent of America, with a duty to arrange for the maintenance of America's planes; Airline and Rich could not profit at the expense of America by accepting compensation from International for maintenance of America's planes; (2) any agreement of International to pay Rich for directing America's planes to International for service was without consideration for the reason that International already had a contract with America for maintaining the planes; (3) the agreement to furnish the planes for service was never fully performed; (4) the court committed error in admitting testimony as to the knowledge of Airline's directors of the Rich agreement with International; (5) the court failed to make findings upon material issues.

Before entering upon a discussion of these several contentions we are impelled to say that we have seldom been confronted with a more confusing, inadequate and unsatisfactory record in what should have been a simple case. We have found it difficult to choose between reversal of the judgment because of the manifest inadequacy of the trial proceedings, including the decision of material issues, and the onerous burden of determining whether under appropriate rules of appellate procedure the judgment can and should be affirmed.

It was admitted that Airline was the agent of America. The following were factual issues the court was called upon to decide: (1) whether America had knowledge of Rich's agreement with International for payment of so-called commissions at the rate of $2.00 per hour, and gave its consent to the arrangement (the court found that America had knowledge of the agreement); (2) whether International knew that Airline was the agent of America, had authority to place planes for maintenance and was compensated by America for the services (the court made no finding); (3) whether a certain agreement of May 8, 1952, for delivery of planes to International signed by Miller was executed on behalf of Rich as well as on his own behalf. This would depend upon the existence of a partnership between Rich and Miller with

respect to that transaction, as alleged by International (the court made no finding); (4) whether the agreement to pay Rich commissions was without consideration for the reason that he was a party to the agreement of May 8th under which the planes in question had, prior to the agreement with Rich, been delivered to International for service. If Rich was a party to the May 8th agreement there would be involved the question whether that agreement was superseded by one entered into November 25, 1952, to pay Rich commissions (the court made no finding); (5) if Rich was a party to the May 8th agreement, whether that agreement obligated him and Miller to deliver to International five planes, or was only an agreement to use their efforts to deliver five planes, and if the former, whether there was a breach of the agreement and whether International was damaged thereby. The latter were material facts for the reason that International was claiming damages of $13,644 for failure to deliver the planes as agreed (there was no express finding); (6) whether there was an agreement that commissions would be paid to Rich only in the event all charges for service of the planes in question had been paid, and whether such charges had been paid prior to the institution of the action (the court found there was such an agreement but made no finding whether the charges had been fully paid).

It was found that on or about May 31, 1953, an account was stated between Rich and International and there was found due to Rich, by reason of the commission agreement, $7,700. It was also found that International became indebted to Rich for money had and received in the sum of $7,700, no part of which had been paid.

Rich sought recovery of $1,079 for overpayment on the note, but, although the decision was against him upon this claim, he has not appealed and the point is not to be considered. As previously mentioned, International was given judgment for $1,500 against Rich and Miller for personal services of plaintiff's assignor, Batchelor, as an aviation consultant. The correctness of this feature of the judgment is not in question on the appeal.

Plaintiff contends that the failure of the court to make findings on all material issues requires a reversal of the judgment. At the outset of our inquiry into this contention we note that at the direction of the court the attorney for plaintiff prepared the findings. It appears from the record that the court signed the findings, conclusions and judgment as prepared by plaintiff's attorney. The spectacle of an attack

made upon the sufficiency of the findings by counsel who prepared them is a novel one in our experience although, as we shall see, it has been viewed by other courts.

It is trite to say that it is the duty of the trial judge to see that the findings dispose of the essential factual issues to his satisfaction. But it is well known that frequently, if not usually, if findings are prepared by the party directed to prepare them and, as proposed, are not objected to, the judge signs them in the form in which they are presented. It is equally well known that for a trial judge to rely implicitly upon counsel in the preparation of findings is to invite reversal of his judgments.

An attorney who prepares inadequate or erroneous findings invites error on the part of the court, and if error is unwittingly committed by the court the responsibility rests upon the attorney and his client. It is settled that where findings are prepared by counsel designated by the court and it appears that the attorney was at liberty to use his own judgment as to the text of findings, no claim of insufficiency of the findings will be entertained on appeal from the judgment. (*Snow Mountain W. & P. Co.* v. *Kramer,* 191 Cal. 312, 325 [216 P. 589]; *Anderson* v. *Derrick,* 220 Cal. 770, 775-776 [32 P.2d 1078]; *Tucker* v. *Cave Springs Min. Corp.,* 139 Cal.App. 213, 218 [33 P.2d 871].) This is merely a phase of the rule that a party may not complain of error which he has invited. (4 Cal.Jur.2d 420-421.) Although the rule would not be strictly applied if to do so would penalize the party unjustly, we have no doubt that in the present case it should be applied in the manner and to the extent hereinafter set forth.

From the fact that plaintiff's attorney prepared the findings it follows that he requested no findings upon the issues as to which he contends the findings were deficient. Therefore, plaintiff must be held to have waived findings on those issues. It is the general rule that where findings are waived it will be presumed that every fact essential to support the judgment was proved and found by the court. (24 Cal.Jur. 956.) There is an intention to admit the sufficiency of the findings and the evidence. Here we have only a waiver of findings as to some of the material issues, and it is contended that as to some of the findings the evidence was insufficient. In this somewhat peculiar situation we think we should proceed as if the court had made findings on all issues that would be consistent with the evidence and

the judgment. It is reasonable to suppose that if plaintiff's attorney had believed that findings which he claims were omitted would have been in plaintiff's favor he would have asked the court to make them. Certainly findings favorable to International upon some of the issues respecting which no findings were requested would have been inconsistent with the judgment that was rendered on the cross-complaint and the counterclaim, and would have resulted in a judgment in favor of International. We shall therefore discuss the omitted findings, and the evidence pertaining to the subject matter of each, as if findings had been made in favor of Rich on all issues with respect to which the evidence was sufficient to justify the same.

We shall discuss first the contention that there was insufficient evidence to support the finding that the terms of the commission agreement were disclosed by Rich to America. ■ Appellant relies upon the rule that an agent may not, without the consent of his principal, make a profit through use of his position. Therefore, it is contended Rich could not recover the commissions without proof that America consented to his receiving them. Without considering whether International could have developed facts that would have given International the benefit of the rule it is clear that it did not develop sufficient facts. The basis of the rule is that the agent has kept something for himself to which he has no right. It was therefore incumbent upon International to prove that America did not get the benefit of the commissions earned by Rich. There was a presumption against fraud to be overcome, and no evidence to overcome it. There were many ways in which America could have derived a benefit through Rich's arrangement with International. Mere suspicion that none of them existed is not sufficient. ■ But aside from this, there was testimony by Rich that he informed Miller of the arrangement while Miller was president of America and that he also informed a General Randall of the commission arrangement shortly before Randall became president. From the fact that America did not complain of the arrangement it was inferrible that the commission agreement was satisfactory to the company. There was also circumstantial evidence from which it could have been inferred that the receipt of commissions by Rich was not kept secret from America. Rich testified, and there was no evidence to the contrary, that all Airline's employers, namely, America, Mantz, Caribbean America (operated by Rich and Miller)

and one Illitch had knowledge of the payment of commissions. It appears to have been a general practice of Airline and International.

■ Appellant says there was no evidence that International knew that Rich had authority to place America's planes for maintenance service and then argues that in the absence of knowledge of that fact the commission agreement would have been invalid under the rules pertaining to dual agency. Batchelor, who represented International throughout, testified that at the time the agreement was made Rich and Miller had authority to place the planes in question for maintenance service. This was sufficient.

■ The court made no finding upon the defense to the cross-complaint of want of consideration. This defense was advanced on the theory that on November 25th International already had an agreement for the servicing of America's planes. It is true that by agreement entered into in June, 1952, the servicing of America's planes by International was the subject of a formal written agreement. However, by that agreement America did not promise to place with International any specific planes and although the agreement was to run for a year it was subject to termination by either party on 10 days' notice; moreover, regardless of this agreement, there was a consideration for the November 25th agreement. On May 8, 1952, an agreement was entered into between International and Miller (then president of America) reading as follows: "Maint Price to be $32—3 Comm. $8,000 per aircraft to be paid to Inter prior to each ship receiving 8,000 hr inspection. Thirty day cancellation. (Signed) Fred Miller, G. Batchelor. Schedule: 1st ship in 5 days, 2nd ship in 10 days, 3rd ship in 20 days, 4th ship in 30 to 45 days, 5th ship in 45 to 60 days." Under this agreement International had been paying Miller commissions at the rate of $3.00 per hour for maintenance. The November 25th agreement read as follows: "MILLER, RICH AND BATCHELOR. No commission on 487 of $3.00 per hr. unless ship allowed 1,000 hour on engines. From December 1, only $2.00 commission until a difference of $4,000. minimum to International Airports or until Slick does 8,000 hour overhaul 472 and 73M. Then maintenance on these ships goes to International Airport. This supersedes all other agreements." One copy of this agreement contained the notation "$29." It is clear from the evidence that by November 25th Miller had resigned as president of America, that Rich was taking over the matter of placing not only

America's planes but also other planes for service, that the May 8th agreement was superseded by the November 25th agreement and that instead of paying $3.00 per hour to Miller as in the past a commission of $2.00 was to be paid to Rich. Also by the later agreement International accomplished the purpose of preventing a cancellation by America of the June agreement which was subject to cancellation. This was substantial consideration.

 Appellant contends that the May 8th agreement was made on behalf of Rich as well as by Miller, that it bound them to deliver five planes on certain dates, that they were not delivered on the agreed dates, one of them was never delivered to International and that International suffered damage. Rich was claiming commissions for work on only three planes, the court found that the November 25th agreement, which superseded all former agreements, related to work on only three planes and this finding had support in the testimony of Rich. There is no merit in the contention that there was a breach of contract on the part of Rich to deliver planes for service.

Appellant contends that the evidence was insufficient to show that the maintenance charges on the airplanes delivered to International were paid. The court made no finding as to this issue although it was found that payment of commissions was conditioned upon payment of the charges.

 It was alleged in the answer to the cross-complaint that the agreement between Rich and International provided that the $2.00 commission would be payable only against full payment to International of the maintenance charges against the aircraft. By this pleading and at the trial appellant assumed the burden of proving that the maintenance charges had not been fully paid. Batchelor testified that there were maintenance charges with respect to Air America's three planes which were unpaid at the time of trial. However, there was evidence that invoices of International for maintenance services on America's planes were paid as late as August 1953 upon bills dated in July. The period for which Rich sought commissions was from December 1, 1952 to May 31, 1953. It was a reasonable inference that if invoices presented in July 1953 were paid when due, bills for maintenance services for prior months had also been paid; it is presumed that in business transactions the ordinary course of business has been followed (Code Civ. Proc., § 1963, subd. 20), and in the absence of indisputable evidence to the contrary the presumption will support a finding based thereon.

Furthermore, Batchelor's testimony did not compel an inference that the unpaid maintenance charges related to the period for which Rich is seeking a commission.

Although the court made no finding as to the issue of nonpayment, had counsel for appellant believed the court would have found that the condition of the oral agreement had not been performed, he would have requested such a finding. Finally, since International tried the issue in the court below upon the assumption that nonpayment of the maintenance charges was a part of International's defense, it may not now assert that proof that the charges had been paid was a part of Rich's case. It cannot change the theory upon which it elected to stand in the trial court. (3 Cal.Jur.2d, 607.)

The briefs discuss the evidence as to Airline's knowledge that Rich was collecting commissions. This is wasted effort. Rich, admittedly, was the sole stockholder of Airline.

We have considered at length the contentions of International but there is yet a finding that is not mentioned in the briefs, namely, that an account was stated between Rich and International by which it was found that $7,700 was due Rich as commissions. This finding, alone, would be sufficient to support the judgment. However, for several reasons, we have refrained from adopting this finding as a basis for affirmance of the judgment; counsel have entirely overlooked the significance of the finding; the cross-complaint alleged that an account was stated May 31, 1953, by which it was found there was due to Rich $6,000, and this figure was changed by amendment during the trial to $7,700; we are in doubt whether plaintiff's counsel intentionally incorporated the finding in the findings he prepared, and whether the court intended to find an account had been stated. That finding is merely another of the oddities that have perplexed us. In view of the evidence we do not understand why counsel for plaintiff requested the court to make the finding nor why the court made it. Neither do we understand why it is ignored in the briefs. Nevertheless the finding, in the absence of any attack upon it, would preclude a reversal.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Petitions for a rehearing and to augment the record were denied May 22, 1957. Appellant's petition for a hearing by the Supreme Court was denied July 8, 1957.