WOOD, P. J.
 

 The demurrer of defendant city of Pasadena to the first amended complaint was sustained without leave to amend, and judgment of dismissal was entered as to that defendant. Plaintiff appeals from the judgment.
 

 The first cause of action of the first amended complaint alleged that on March 24, 1958, about 4:35 p. m., at the intersection of Mountain Street and Sunset Avenue, in Pasadena, the defendant Lon Harris so negligently operated his automobile in a northbound direction as to cause it to collide with a motorcycle which was being operated by plaintiff and which was proceeding in an eastbound direction; and by reason of the premises plaintiff sustained bodily injuries to his damage in the amount of $50,000.
 

 The second purported cause of action of said complaint alleged, as follows: Plaintiff repeats the allegations of the first cause of action with the same effect as if those allegations were set forth at length. The injuries sustained by plaintiff were the proximate result of the dangerous and defective condition of the public streets of Pasadena. Said condition was not only created by defendant city, but said defendant had knowledge of said condition for a reasonable time after acquiring such notice. Said condition is described by a diagram which is annexed to said complaint. Among other negligent acts committed by defendant Harris, he failed to take into account the likelihood of traffic eastbound on Mountain Street. Defendant city was negligent “in creating, maintaining and permitting to exist a through street with such an extensive jog at said intersection, a hedge to obscure the view of motorists, and a boulevard stop so far south on Sunset as to make cars going north tend to ignore the lefthand intersection and take into account only the righthand intersection. ’ ’ The plaintiff, proceeding east on Mountain Street, and knowing that he was on a through highway, and knowing that northbound vehicles were required to yield, entered the intersection without stopping. Under such circumstances the condition consti
 
 *30
 
 tuted a trap. The defendant city gave no warning to motorists of such dangers. The plaintiff has information and believes that there have been other accidents at the same intersection due to the same causes. As a proximate result of such conduct on the part of said city, concurring with the negligence of the defendant Harris, as aforesaid, the plaintiff was severely injured. On March 7, 1958, there was served on the city clerk of said city a notice of claim, a copy of which is annexed to said complaint. Said city rejected the claim.
 

 The third purported cause of action of said complaint alleged, as follows: Plaintiff repeats all the allegations of the first and second causes of action with the same effect as if those allegations were set forth at length. The above described condition of said intersection was a nuisance that was created, maintained and permitted by said city in that its use by motorists was likely to cause and did cause accidents and in that manner was injurious to their health.
 

 The fourth purported cause of action alleged, as follows: Plaintiff repeats the allegations of the preceding causes of action. The premises at the southwest corner of said intersection were owned by defendants McNeair and were under their possession and control. On the northeast corner of said premises there was a large hedge that constituted an obstruction to vision of northbound traffic on Sunset; that such obstruction existed for a long time prior to this occurrence; that these defendants knew it was a dangerous condition. Such conduct constituted negligence on the part of these defendants and also constituted a nuisance. As a proximate result of such negligence and the maintenance of such nuisance, the plaintiff was injured.
 

 A general description of the intersection, as shown by the diagram attached to said complaint, is as follows: Sunset Avenue extends north and south and is about 31 feet wide. Mountain Street, at the east side of Sunset, extends east and west and intersects Sunset at a right angle, and is about 30 feet wide. Mountain Street, at the west side of Sunset, extends northeasterly and southwesterly and intersects Sunset at an angle of approximately 45 degrees. The southwest corner of the intersection is about 28 feet north of the south line of Mountain Street (on the east side of Sunset) as extended across Sunset. In other words, there is a “jog" of approximately 28 feet in Mountain Street. Mountain, on the west side of Sunset, extends northeasterly, at a 45-degree angle, to Sunset; then there is a “jog" in Mountain of approxi
 
 *31
 
 mately 28 feet to the south, where Mountain (on the east side of Sunset) extends east from Sunset at a right angle.
 

 The diagram also shows a boulevard stop sign on the southeast corner of the intersection at a place which is estimated to be about 8 feet south of Mountain and about one foot east of Sunset. (This estimate of distances is made by comparing such unmarked distances with the marked "widths” of the streets.) The diagram also shows the marked "limit line” south of the intersection at a place estimated to be about 3 feet south of the boulevard stop sign. The diagram also indicates that a "hedge” is on the southwest corner of the intersection within the angle formed by the inside lines of the sidewalks.
 

 It thus appears that the second and third alleged causes of action pertain to the defendant city. In summary, the alleged negligent acts of the city (as shown by the allegations and the diagram in the amended complaint) were as follows: Creating and maintaining Mountain Street as a through street, under the following conditions: (1) with a 28-foot jog at its intersection with Sunset Avenue; (2) with a hedge at the southwest corner of the intersection "to obscure the view of motorists”; and (3) with a boulevard stop so far south on Sunset as "to make cars going north tend to ignore” the west side of the intersection and "to take into account only” the east side of the intersection. In addition to such alleged acts of negligence on the part of the city, there was an allegation that the plaintiff, who was on a motorcycle traveling east on Mountain, entered the intersection without stopping, "knowing that he was on a through highway and knowing that northbound vehicles were required to yield.” It was also alleged that the condition was a trap and a nuisance.
 

 Appellant argues that the physical layout of the intersection caused the driver of the automobile to believe there was an intersecting street only on his right; that a person driving north on Sunset would not expect any cars from the west; that appellant believed he was protected from northbound motorists by the stop sign, but the sign was so far back that a northbound motorist "having stopped and started” would collide with appellant; that the northbound motorist would be in the path of danger before he could see an eastbound vehicle, and that it would be too late to take "evasive action”; that the view of each motorist was obscured by a hedge and trees planted and maintained by the city; that the city placed
 
 *32
 
 no warning signs or zigzag lines on the street to warn motorists of danger at the intersection.
 

 There is no allegation in the amended complaint concerning trees. The diagram attached to the amended complaint indicates that the hedge ivas inside the sidewalk line and on private property. In the fourth cause of action it is alleged that the hedge was on the property owned by defendant MeNeair.
 

 There is no allegation in the amended complaint that the stop sign itself was obscured in any way by foliage, shrubbery, or anything. There was no allegation that the stop sign was not maintained in a proper manner. Appellant alleged that he knew that Mountain Street (on which he was traveling) was a through street, and he believed that he was protected by the stop sign.
 

 Appellant contends in effect that the stop sign was “so far back” from the place where he entered upon Sunset (at the north part of the jog) that he was not protected by the sign (which was at the south part of the jog).
 

 Section 471, subdivision (a), of the Vehicle Code provides: “The State Department of Public Works may erect stop signs at any entrance to any state highway. When such stop signs have been erected at any entrance to a State highway, such highway shall constitute a through highway.” Subdivision (b) of said section of the Vehicle Code provides: “ [A]ny local authority may designate any highway under its jurisdiction as a through highway and may erect like stop signs at specified entrances thereto. ...” Section 82.5 of the Vehicle Code states: “A ‘through highway’ is a highway or portion thereof at the entrance to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same, and when stop signs are erected as provide^ in this code.” The local authority which had the right to designate Mountain Street as a through highway was the legislative body of defendant city, that is, the Board of Directors of the City of Pasadena. The amended complaint alleges in effect that the defendant city designated Mountain Street as a through highway, and that said defendant erected the stop sign on Sunset at the southeast corner of the intersection.
 

 Apparently, the asserted liability of the defendant city, under the alleged second cause of action, is based upon section 53051 of the Government Code (a part of the Public Liability Act of 1923). That section provides, in part: “A
 
 *33
 
 local agency [city] is liable for injuries to persons and property resulting from the dangerous or defective condition of public property. ...” In the present case the acts of the defendant city in designating Mountain Street as a through street, and in determining the location of the stop sign at the southeast corner of the intersection, were of course governmental or legislative matters. The act of the city in maintaining Mountain Street, at said intersection, as a through street, and the act of the city in causing the stop sign to be placed on the southeast corner of the intersection, did not constitute a dangerous or defective condition of public property within the meaning of said section 53051 of the Government Code. The question as to where the stop sign should be placed was for the. determination of the legislative body of defendant city. In
 
 Perry
 
 v.
 
 City of Santa
 
 Monica, 130 Cal. App.2d 370 [279 P.2d 92], plaintiff sought damages for personal injuries resulting from a collision of automobiles at a “blind” intersection of streets. It was contended therein that the city was liable because it failed to place stop or warning signs at the intersection. In that case the city’s demurrer to the complaint was sustained without leave to amend. That ruling was upheld on appeal. It ivas said therein (p. 374) : “Clearly the local authorities are to’determine when a sign or signal is necessary at a particular intersection.” It was also said therein (p. 372) : “The governmental immunity which a city enjoys as a state agency can be taken away only by legislative enactment. [Citations.] The Public Liability Act was not enacted for the purpose of protecting those who come upon city streets, but only those who sustain injuries by reason of a ‘dangerous or defective’ condition.” It was also said therein (p. 375): “To hold that the city had the affirmative duty to erect stop signs at the intersection in question would unduly extend the scope of the Public Liability Law and go far toward establishing the rule that a municipality is an insurer.” In the present ease there was no liability on the part of the defendant city by reason of the location of the stop sign.
 

 Appellant also contends in effect that the jog in Mountain Street, at said intersection, was a dangerous and defective condition of public property and that the city was negligent in not erecting warnings at the intersection. The stop sign ivhich the city erected at the intersection was a warning. The jog itself was an indication as to the degree of care
 
 *34
 
 that should be exercised in traversing the intersection. In
 
 Waldorf
 
 v.
 
 City of Alhambra,
 
 6 Cal.App.2d 522 [45 P.2d 207], a street, extending in a northerly and southerly direction, was narrower on the south side of an intersection than it was on the north side of the intersection. In that case an automobile approached the intersection from the north or wide part of the street, crossed the intersection, ran over the curb at the south or narrow part of the street, and collided with a pole in the parkway. An objection to the introduction of evidence was sustained on the ground that the complaint did not state a cause of action. It was said therein (p. 526): “Under the law the City of Alhambra, in the exercise of its governmental function and discretion, was not required to widen Fremont Avenue south of Alhambra Road to correspond with the width of that avenue north of such road, and is not actionably liable for its failure so to do. Nor do we think that the city is chargeable with liability in failing to maintain barriers, lights or warning signs or notices at the point of ‘offset’ or ‘jog’ in the street. In almost every city of size in this state some streets are laid out and improved without uniformity as to width or direction, resulting in so-called ‘jogs,’ ‘offsets,’ or ‘goose-necks, ’ some ending at cross-streets and some even forming cul-de-sacs. We are convinced that the law does not require a municipality to maintain either barriers or warning devices at ‘jogs’ or ‘offsets’ of the construction, nature and appearance of that described in the complaint herein. To the prudent operator of a motor vehicle, acting within the scope of the law governing his own conduct in traversing a public street in the nighttime, the pavement, curb, sidewalk and the parkway with the trees or poles therein constitute a barrier or warning sufficient to avert disaster and as readily visible to the alert driver as a sign informing him of the condition, there being nothing to conceal the real condition nor to deceive the operator of an approaching automobile. ...” In the present case the jog in Mountain Street did not constitute a dangerous or defective condition of public property, and the defendant city was not required to erect a warning sign at the jog in the street.
 

 As above shown, the third alleged cause of action is based upon the theory that the intersection (including the hedge on the private property) was a nuisance that was created, maintained, and permitted ■ by the defendant city. “Nuisance” is defined by section 3479 of the Civil Code as follows: ‘ ‘Anything which is injurious to health, or is indecent
 
 *35
 
 or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river ... or any public park, square, street, or highway is a nuisance.” In
 
 Lewis
 
 v.
 
 County of Contra Costa,
 
 130 Cal.App. 2d 176 [278 P.2d 756], plaintiff was injured when, in crossing a public highway, he jumped over a mud filled gutter onto a mud covered sidewalk, slipped and fell. The county was joined as a defendant on the theory that it suffered an alleged nuisance on private property to continue unabated and failed to remedy a dangerous and defective condition of the highway. In that ease it was said (p. 180) : “Even if we assume that the defendant Smith was maintaining a nuisance, it does not follow that the county owed plaintiff a duty to abate that nuisance or respond in damages to the plaintiff for injuries caused by the condition which constituted the nuisance. Plaintiff cites no authority for any such doctrine. The logic of plaintiff’s argument would comprehend a liability upon the part of the county or of the state whenever any person suffers personal injury or property damage at the hands of any person maintaining a nuisance if the county or the state fails to abate the nuisance after reasonable notice of its existence. There is no such doctrine. The measure of county liability is defined by statute, the Public Liability Law [citation], which imposes a liability under certain conditions in respect to injuries resulting from dangerous or defective property of the county. The county is not thereby made responsible for injuries caused by conditions maintained by others upon property neither owned by nor under the control of the county.” In the present ease the jog in the street was not a nuisance, and the defendant city was not required to abate the condition, with respect to hedge, on the private property at the southwest corner of the intersection.
 

 The demurrer of the defendant city was properly sustained.
 

 The judgment is affirmed.
 

 Lillie, J., and Shea, J. pro tem.,
 
 *
 
 concurred.
 

 *
 

 Assigned by Chairman of Judicial Council.