[Civ. No. 7089. Fourth Dist. July 3, 1963.]

AMELIA C. CAMPBELL et al., Plaintiffs and Appellants, v. CITY OF PALM SPRINGS, Defendant and Appellant; AUBREY CLARK et al., Defendants and Respondents.

14

Alvan H. Fisher and David M. McGahey for Plaintiffs and Appellants.

Thompson & Colegate and Robert E. Dauber for Defendant and Appellant.

Hews, Hews & Brown and John H. Hews for Defendants and Respondents.

GRIFFIN, P. J.—Plaintiffs, respondents and appellants, Amelia C. Campbell, Helen Campbell, Bettie Cobb and George M. Campbell, brought this action for damages against defendant and appellant City of Palm Springs, a municipal corporation, and defendants and respondents Aubrey Clark, individually and doing business as Clark Brothers, Homer L. Clark, individually and doing business as Clark Brothers, Clark Brothers, a copartnership, and defendant Thomas P. Ward, as a result of an automobile accident which occurred May 5, 1955, on Ramon Road, a public street, about 31 feet wide, in the City of Palm Springs.

According to the evidence, consisting of about 2,000 pages of reporter's transcript, plaintiffs were traveling easterly on Ramon Road in a Pontiac car about 7:15 p.m. It was daylight. Amelia C. Campbell was driving. Defendant Ward was driving westerly on the same road at about 75 to 80 miles per hour in a 1947 Cadillac. To the north of this highway was a city dump and other property including housing units belonging to defendant city and under lease to defendants Clark. There was a row of tamarisk trees on the north side of the roadway, about 700 feet long. There was a dirt road leading up from the dump on an angle and running northeasterly from Ramon Road at a 90-degree angle with another row of tamarisk trees extended in that direction. The access road was rough and contained ruts and bumps. A stop sign was erected by the city near the edge of Ramon Road for the traffic coming from the northeast on the access road. On this occasion defendant Douglas McGarrity was driving a Chevrolet car owned by Sarah Clark up said dump road.

The complaint alleged that McGarrity was driving the Chevrolet with the consent of Sarah Clark, and that McGarrity had no operator's license. In the pretrial order, it was agreed that McGarrity drove the defendant Sarah Clark's car and that plaintiffs seek to recover against defendants McGarrity, Sarah Clark, Aubrey Clark, Homer Clark and Clark Brothers, on the basis that they and each of them were negligent, i.e., that McGarrity was negligent; that Sarah Clark was liable because she allowed McGarrity to drive her car with her permission; that Sarah was the manager and operator for Clark Brothers and that McGarrity was a servant and employee of Clark Brothers and was acting within the scope of his employment at the time of the accident; that Sarah Clark's car was being used by defendant McGarrity for Clark Brothers business; and that all defendants were liable because they let McGarrity drive when they knew that he was not a safe driver and had no operator's license.

It appears that just before McGarrity came onto the highway traveling west, he made a stop, and after starting again he looked east on Ramon Road and saw a black car coming a considerable distance away; that he proceeded with one or two left wheels on the paved portion of Ramon Road and watched the Ward car approaching and suddenly it swerved to his left across the highway and ran into plaintiffs' car. Apparently Ward's car was not damaged and he continued on and was not

found until several days later when he gave his version of the accident.

Testimony from a deposition of Ward shows that he had had a few drinks and was traveling westerly in his Cadillac; that there was a row of trees along there and he knew there was a dirt road leading to and from the dump and he also knew of the boulevard stop; that when he was about 100 to 200 feet from it, he observed a vehicle on it and no part of the vehicle was hidden from his view by virtue of the trees; that when he saw the car come out of the dump road, he immediately applied his brakes; that he saw no traffic coming from the west on Ramon Road, but he then suddenly saw plaintiffs' car and turned to his left and collided with the eastbound car. The officers believed from what they saw that Ward was intoxicated.

The action against the city, as per the complaint and pre-trial order, was predicated upon the theory that the city's conduct of a proprietary operation, such as maintenance of a city dump and rental of units, was negligently maintained, in that the condition of the road and the maintenance of the tamarisk trees resulted in an obstruction to clear vision on that road and was a causation of the accident which followed; that such condition was maintained in a proprietary capacity and was a nuisance on the part of the city; that the city was negligent in failing to make said access road intersection approach Ramon Road at right angles; that as they are, the tamarisk trees on the north side of the road effectively hide cars on the intersecting road from drivers approaching from the east and as a result the city knew and had notice of such blind intersection, and that it was a hazard, and that no signs were posted notifying the traveling public of such hazard. Accordingly, it is argued that such negligence was *a proximate cause of this accident.*

The court found generally in favor of plaintiffs on this claim; and found that the city had knowledge and notice of the dangerous and defective conditions for many months prior to the accident and failed to remedy same or to take action reasonably necessary to protect the public against same, and rendered judgment against the City of Palm Springs.

The trial court found as untrue the answer of the Clarks in paragraph VIII alleging that McGarrity and Sarah Clark were not, at the time, the agents of the defendants Clark or employed by them. Nowhere does the trial court specifically find that defendants Sarah Clark or McGarrity were guilty of

any negligence which would be a proximate cause of plaintiffs' injuries. The same may be said as to defendants Clark and their copartnership.

As an explanation of the finding made as to the defendants McGarrity and Sarah Clark being agents of the Clarks and acting within the scope of their employment, it is pointed out that during the second day of trial it was announced that McGarrity and Sarah Clark had withdrawn from the case by reason of a covenant not to sue and no judgment was entered as to them. Apparently, their claimed principals remained in the case and escaped liability. The judge expressed in his oral decision that McGarrity's conduct met the standards of due care and accordingly his actions did not constitute negligence, and hence there was no liability of his principals. After rendering judgment against Ward and the City of Palm Springs, the findings recite: "That plaintiffs are not entitled to judgment against the other defendants." Judgment was entered accordingly. ▇ On plaintiffs' appeal from this portion of the judgment refusing to allow judgment against the remaining defendants, plaintiffs' only argument is that the evidence shows, *as a matter of law,* that McGarrity was negligent and that his negligence was a proximate cause of the injuries sustained by them. They claim that the evidence is not in conflict; that McGarrity pulled out in front of Ward on the highway *without stopping*; and that the vision was obstructed.

We see no merit to the claim. The evidence was in conflict as to whether McGarrity stopped at the stop sign. According to Ward's testimony, he was not expecting a car to come from that road, but he did say that he saw a car moving all the time and at the time of applying his brakes he did not observe any deceleration of it. The record indicates that he was evasive in reference to the failure of McGarrity to make a stop and it shows he did not know as a fact whether the other vehicle stopped or not. On the other hand, although McGarrity did not appear personally to testify at the trial, plaintiffs offered into evidence his version of the accident through his statement to the police officer. According to this statement, which was received in evidence without objection, McGarrity said that he came to a stop near the paved portion of the roadway and that he observed a car coming at a considerable distance to the east; that he proceeded with one wheel or the two left wheels on the pavement portion of the

18

roadway up a rise which crests about 150 yards; that he watched this car approaching from the east to be sure that it didn't strike his car; that he observed another car in the rear view mirror, moving in the opposite direction, collide head-on with the car coming from the east, when the car coming from the east swerved across the roadway and off of his side of the road. He further told the officers that he did not believe that his car constituted a hazard or any obstacle to the car which was later identified as the Ward car, which swerved to the opposite side of the two-lane roadway at that point. In his deposition, found in the record on appeal, McGarrity testified that he "stopped at the stop sign, moved up slowly to the pavement (about 10 to 14 feet)"; his "left wheel was going on to pavement," in a westerly direction and he looked back and saw the car approaching from the rear of his car, not so close, but on the next observation he was "pretty close" to him.

The evidence was sufficiently conflicting to submit the question in reference to making the stop to the trial court, and its determination cannot be disturbed. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689].) ■ Where findings were prepared by counsel for plaintiff and appellant as designated by the court and it appears that the attorney was at liberty to use his own judgment as to the text of the findings, no claim of insufficiency of the findings will be entertained on appeal from the judgment, this being merely a phase of the rule that a party may not complain of error which he has invited. (*Johnson* v. *Rich,* 150 Cal.App.2d 740 [310 P.2d 980].) Since plaintiffs rely solely on the question as to whether the evidence shows, as a matter of law, that McGarrity failed to make a stop at the stop sign and was therefore guilty of negligence as a matter of law, under Vehicle Code, section 577 (now Veh. Code, § 22450), we will not discuss further the question of findings on the subject. This portion of the judgment must be affirmed.

■ As to the sufficiency of the evidence to support the judgment against the City of Palm Springs, a close question is presented on the evidence pointed out. Plaintiffs produced several witnesses who testified that the tamarisk trees along the north side of Ramon Road spread out close to the pavement and when driving westerly thereon toward the junction of the dump road, they caused an obstruction to vision of drivers approaching Ramon Road on the dump road; and in going out on the access road, on account of the trees, one had

to be very careful, and that such condition existed months before the accident occurred. One witness testified that the dump roadway contained several ruts, holes and bumps, and that the stop sign was so erected that it was at an angle of about 45 degrees to Ramon Road and not parallel to it. The city dump, in the absence of the tamarisk trees could be seen from the road. Possibly the trees were maintained there so the view of the dump would be prevented.

It is plaintiffs' position that the city had the exclusive control and right to control of not only the through street, Ramon Road, but also the property adjacent thereto on the north, and likewise a concomitant duty to so construct, maintain and control Ramon Road and such property and conditions existing thereon so that persons traveling upon Ramon Road would be reasonably free from foreseeable harm occasioned by the condition of the street and property adjacent thereto; that said street and property adjacent thereto were constructed, maintained and controlled at the site of the accident and the approaches thereto so as to constitute a trap for travelers on Ramon Road; that there was absolutely nothing to put a westbound driver on notice that there was any possibility of danger to be anticipated; and that in the case of proprietary activities, the Public Liability Act (Stats. 1923, ch. 328, p. 675; Gov. Code § 53051) has no application and city would be liable for damages caused by defendant city's negligent maintenance of the approach to the portion of its premises being utilized in its proprietary capacity. (Citing *Boothby* v. *Town of Yreka City*, 117 Cal.App. 643 [4 P.2d 589]; *Dennis* v. *City of Orange*, 110 Cal.App. 16 [293 P. 865].)

It is argued that the municipality may be held liable for creating or maintaining a nuisance, even though a governmental activity is involved (citing *Phillips* v. *City of Pasadena*, 27 Cal.2d 104 [162 P.2d 625]; 36 Cal.Jur.2d 506, § 38); that this case is unique, in that the defendant City of Palm Springs owed to plaintiffs herein duties growing from two separate holders of public property: (1) the duty of the municipality to so create and maintain its streets and highways that the travelers thereon are reasonably free from dangers reasonably to be anticipated from dangerous and defective conditions; and (2) the duty of an abutting possessor of land to exercise reasonable care to avoid injury to the traveling public arising from unnecessarily dangerous conditions created or allowed by him on such abutting property

where the consequences of failure to do so are reasonably foreseeable. (Citing *George* v. *City of Los Angeles,* 11 Cal.2d 303 [79 P.2d 723] ; *Fisher* v. *Southern Pac. Co.,* 72 Cal.App. 649 [237 P. 787] ; *Lavelle* v. *Grace,* 348 Pa. 175 [34 A.2d 498, 150 A.L.R. 366] ; *Heath* v. *Manson,* 147 Cal. 694 [82 P. 331] ; *Teilhet* v. *County of Santa Clara,* 149 Cal.App.2d 305 [308 P.2d 356] ; *Gallipo* v. *City of Long Beach,* 146 Cal.App.2d 520, 528 [304 P.2d 106] ; *Shea* v. *City of San Bernardino,* 7 Cal.2d 688 [62 P.2d 365].)

The city maintains that no liability attaches to a municipality for a road which jogs, goosenecks or offsets at the cross streets, even where the city fails to maintain warning devices or notices. (Citing *Robertson* v. *City of Long Beach,* 19 Cal.App.2d 676 [66 P.2d 167] ; *Mercado* v. *City of Pasadena,* 176 Cal.App.2d 28 [1 Cal.Rptr. 134].) These cases are factually dissimilar.

It is also argued that the stop sign was properly placed. (Citing Veh. Code, §§ 471, 577 (now Veh. Code, §§ 21352, 21354, 21355 and 22450 respectively) ; *Elmore* v. *County of Lassen,* 10 Cal.App.2d 229 [51 P.2d 481].) Placing a stop sign in a location so that private property wholly obscures it from the view of those it is intended to warn, presents a fact question as to whether a dangerous or defective condition of public property existed. (*Dudum* v. *City of San Mateo,* 167 Cal.App.2d 593 [334 P.2d 968].) Appellant city cites *Perry* v. *City of Santa Monica,* 130 Cal.App.2d 370 [279 P.2d 92], to support its claim that there was no duty of the city to erect stop signs at all blind intersections, nor to cut down natural vegetation which tends to obstruct the view at an intersection. That case is factually dissimilar and did not involve the duty of a city regarding the maintenance of its property held in a proprietary capacity. In *Boothby* v. *Town of Yreka City, supra,* 117 Cal.App. 643, it was held that while the erection and maintenance of an engine house by a city is governmental, when a city leases a portion of its property, as was done in that action, it is proprietary in character.

The evidence shows, with little if any dispute, that the city operated the property north of Ramon Road in its proprietary capacity by maintaining a city dump, open to the general public, together with city-owned and operated houses. Portions of this property and houses were leased to Clark Brothers for a monetary consideration. The road leading to and from this property was erected and maintained by the

city and was constructed at a 45-degree angle with trees along its south border as well as trees along the north border of Ramon Road, which trees were so maintained as to make it almost a completely blind intersection up to the point where the road intersected with the pavement of Ramon Road. Although a stop sign was erected near the intersection, the testimony was that even though a stop was made there, the driver of a car could not see approaching traffic coming westerly on Ramon Road until his car came out almost to the pavement, and that such rows of trees in such condition effectively hid cars on the intersecting road from the view of drivers of cars approaching from the east on Ramon Road until such cars were in a place of danger at the intersection. It is undisputed that such a blocked view created a blind intersection and was a hazard to travelers on either Ramon Road or the road intersecting therewith, and the city, in the exercise of its duty, knew or should have known that blind intersections were such a hazard as to cause a percentage of all vehicle collisions in which persons are injured or killed. The trees not only concealed southbound cars approaching the intersection, but concealed from the drivers of cars approaching from the east the very fact that an intersection existed, and appellant city had posted no signs or other devices to warn such drivers that they were approaching a place of danger, a concealed intersection.

It might therefore be held, and it was so found by the court, that the view of defendant Ward was so blocked by said trees at the intersection and the approaching Chevrolet driven by defendant McGarrity was so concealed from defendant Ward until he was in a place of danger, and such was *a* proximate cause of this accident, and that the condition created, constructed, maintained and operated by appellant city was a dangerous and defective condition, a traffic hazard to motorists using said intersection, and the combination of such factors then and there existing constituted a trap for travelers and the general public, and that the probable consequences thereof were readily foreseeable, and such defective and dangerous condition directly contributed to the collision mentioned and was a proximate cause of the injuries and damages to plaintiffs herein.

A "dangerous and defective condition," within the meaning of Government Code, section 53051, is one which creates an unreasonable hazard, or one from which injury to those coming in contact with it might reasonably be antici-

pated, and ordinarily the question whether the condition is dangerous is one of fact, not one of law for the reviewing court. (*Ellis* v. *City of Los Angeles*, 167 Cal.App.2d 180 [334 P.2d 37].)

A municipality may be held liable for failure to guard against accidents due to a dangerous or defective condition, even though that condition exists off of traveled portion of highway, as long as it is so connected with, or in such proximity to, traveled portion of highway as to render it unsafe to those traveling thereon. It is a municipality's duty to keep its streets and sidewalks in a reasonably safe condition for travel by the public, and to use ordinary care to provide against such dangers to the public as may reasonably be anticipated, having due regard to the character of the travel, the incidental purposes for which the highway may be used, and the nature of the danger; and a municipality may be liable for failure to guard against accidents due to a dangerous or defective condition, though the condition exists off the traveled portion of the highway, as long as the condition is so connected with or in such proximity to the traveled portion as to render the highway unsafe to those traveling thereon. (*Gallipo* v. *City of Long Beach, supra,* 146 Cal. App.2d 520.)

In *Marsh* v. *City of Sacramento,* 127 Cal.App.2d 721 [274 P.2d 434], it was held that the city as well as the property owner was liable where a pedestrian fell from the edge of a sidewalk into a vacant lot, the surface of which vacant lot lay some eight feet below the edge of the sidewalk, where there was an excavation and where there was no guard rail or other structure to warn persons using the sidewalk or prevent their falling therefrom. The liability imposed by the Public Liability Statute is not limited to conditions artificially made by the hand of man. (*Smith* v. *County of San Mateo,* 62 Cal.App.2d 122 [144 P.2d 33].)

In *Bauman* v. *City & County of San Francisco,* 42 Cal.App. 2d 144 [108 P.2d 989], it was held that a dangerous or defective condition, within the meaning of the Public Liability Act, can be created by the use or general plan of operation of government-operated property, as well as by a structural defect; that an intervening negligent act of a third person may break the chain of causation, but the defendant's negligence need not be the sole cause of the injury, it being sufficient if it be one of the proximate causes; that the concurrence of such negligence with that of an independent actor

does not break the chain of causation; that there is sufficient support for an implied finding of notice to a person having authority to remedy the dangerous or defective condition in a city playground by reason of the playing of hard baseball in proximity to the small children's section, where the superintendent and assistant superintendent of the recreation commission, as well as the playground directors through whom they acted, had actual notice of such playing, and further where such condition existed for a sufficient time to authorize the jury in finding that they had constructive notice; and that the notice of the dangerous and defective condition may be constructive, and may be shown by the long-continued existence of such condition, it being a question for the jury whether a given condition existed for sufficient time to give such notice.

*Rose* v. *County of Orange,* 94 Cal.App.2d 688 [211 P.2d 45], held that where a county road ran to a state highway and ended there, and on the opposite side of the highway was a deep ditch which presented a potential danger to travelers on the county road, it could not be held as a matter of law that no duty rested on the county to give some warning of this condition, even if it was not created by or within the control of the county; and in an action against a county for injuries to plaintiff resulting from an automobile accident at a point opposite the place where a county road ended at an intersection with a state highway, whether there was any warning given by the county of the dangerous condition existing on the other side of the intersection, or whether an ordinary stop sign, if it was present, was a sufficient warning of such danger, presented questions of fact rather than of law. In *Alwood* v. *City of Los Angeles,* 139 Cal.App.2d 49 [293 P.2d 69], it was held that a municipality is liable for accidents caused by dangerous conditions outside the traveled portion of the highway if the circumstances show that the defects or obstructions are in close proximity to the traveled area and are hidden from ordinary view. ▮▮▮ We conclude that the findings of the trial court in this respect do have evidentiary support.

Judgment affirmed.

Brown (Gerald), J., concurred.

CONLEY, J.*—I concur in affirming the judgment in favor of Aubrey Clark, individually and doing business as Clark

*Assigned by Chairman of Judicial Council.

24

Brothers, Homer L. Clark, individually and doing business as Clark Brothers, and Clark Brothers, a copartnership, but dissent with respect to the affirmance of the judgment against the City of Palm Springs, a municipal corporation, as I do not believe that recovery is justifiable as against the city.

A petition for a rehearing was denied July 22, 1963. Conley, J.,* was of the opinion that the petition should be granted. The petition of the defendant and appellant for a hearing by the Supreme Court was denied August 28, 1963.

*Assigned by Chairman of Judicial Council.