THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EPIFANIO MAYSONET ARROYO and MANUEL ALFREDO MAYSONET RIVERA, Defendants and Appellants.

No. CR-68-25.     Decided November 20, 1969.

*Jorge Arroyo Fernández* for appellants. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

PER CURIAM: The prosecuting attorney filed an information against appellants, charging them with the commission of an offense of murder committed as follows:

"On or about August 4 to 5, 1962, and in ward Monterrey in Vega Alta, P.R., which is part of the court of first instance, Superior Court of Puerto Rico, Bayamón Part, P.R., then and there, the aforementioned defendants EPIFANIO MAYSONET ARROYO and MANUEL ALFREDO MAYSONET RIVERA, unlawfully and wilfully, with malice aforethought and express, manifest and deliberate intent to kill, showing an abandoned and malignant heart, assaulted and attacked with a piece of lumber (crossbar) and with their hands the human being called ISMAEL TORRES BRUNO, known also as ISMAEL ROBLES VÉLEZ, inflicting on him injuries in different parts of his body, as on the head, as a direct consequence of which said ISMAEL TORRES BRUNO, k/a ISMAEL ROBLES VÉLEZ, became unconscious, and said defendants carried him to the road in ward Monterrey in Vega Alta, P.R., where they left him in order that he would be run over by any vehicle traveling along said road, as it actually occurred, said ISMAEL TORRES BRUNO, k/a ISMAEL ROBLES VÉLEZ, sustaining injuries as a consequence of which he died on August 5, 1962."

A jury found them guilty of murder in the second degree and they were ordered to serve from 10 to 15 years in the penitentiary.

Briefly stated, in its fundamental aspects, the evidence for the prosecution showed that around August 1962 defendant, Epifanio Maysonet Arroyo, was the owner of a business situated in ward Monterrey in Vega Alta. On the night of the 4th to 5th of said month Ismael Torres Bruno, k/a Ismael Robles Vélez, asked Epifanio's wife for a "drink". When she served it to him Robles Vélez grasped her hand. When this occurred defendant's son, codefendant Manuel Alfredo Maysonet Rivera, struck a blow on Robles Vélez' face and right afterwards Epifanio struck two hard blows on his head with a crossbar, the former falling unconscious on the ground. Then, codefendants raised him and carried him toward the road, a short distance from the business, and there they left him face downward with the feet toward the edge and the rest of the body toward the road.

The report of the autopsy of Robles Vélez' body was presented in evidence for both parties. This report contains the following "Conclusions: The body presented fractures of the ribs, of the left upper maxillary bone and of the right lower maxillary bone. This type of death is common in automobile accidents." The parties also stipulated that a dark spot which could be seen in two photographs of the deceased, on his back, is a spot apparently produced, that is, the marks of an automobile tire.

The evidence for the defense consisted in a denial of the facts. They denied that Robles Vélez had been at the business that night; that defendants had attacked and even less carried the deceased from the business to the road.

In support of the reversal of the judgments appellants maintain (1) that the jury which sat in this case "could not reach a verdict of guilty on the basis of the testimony of the only two witnesses for the prosecution, apparently eye-

witnesses of the facts, Ramón Reyes Rivera and María Antonia Hernández Márquez", and (2) that the trial court erred in failing to give instructions on Voluntary Manslaughter.

The first error is based on the fact that (a) there were contradictions between the two eyewitnesses presented by the People; (b) that the testimony of these two witnesses should have been rejected because of the motives the latter had to testify against defendants and (c) that they should not have been given credit because of the delay between the occurrence of the facts which gave rise to the prosecution and the date when they testified before the prosecuting attorney.

■ The first assignment of error lacks merits. The contradictions between the witnesses for the prosecution were not connected with the essential facts. One of the contradictions pointed out was in the sense that while one of the witnesses testified that the deceased had drunk rum with anisette that night, the other witness denied it. Another contradiction pointed out was that even though both witnesses testified that defendant Epifanio threatened them with a revolver if they testified what they had seen, one of them said that he saw the revolver and the other said that he did not. Aside from the fact that these testimonies were offered some five years after the occurrence of the events, the jury was not bound to discard all that evidence but rather it had to determine what witnesses should be given total or partial credit. *People* v. *Iturrino de Jesús*, 90 P.R.R. 687 (1964).

As to the motives that the witnesses had to testify against the defendants, the jury had the evidence brought by them for that purpose and also it received the proper instructions of the judge on this legal aspect.

■ The time which elapsed before said witnesses for the prosecution testified before the prosecuting attorney what they had seen, delay which was due, according to their testi-

mony, to the threats to which they were submitted by defendants, did not justify discarding their testimonies. The cases of *People* v. *Lugo*, 70 P.R.R. 134 (1949) and *People* v. *Márquez*, 64 P.R.R. 354 (1945), cited by appellants are not applicable. We are not dealing, as the Solicitor General maintains, with testimonies of third persons concerning statements made by the prejudiced party where the element of time may be one of the determining factors as to whether or not they are dealing with hearsay evidence. The witnesses for the prosecution in this case testified not about what other persons told them, but rather about the facts that they said they had witnessed.

■ The second error also lacks merit. Instructions on misdemeanor are only proper when the evidence so justifies it. *People* v. *Pantoja Aguayo*, 97 P.R.R. 230 (1969) ; *People* v. *Gagot Mangual*, 96 P.R.R. 611 (1968), *People* v. *Tufiño Cruz*, 96 P.R.R. 219 (1968) ; *People* v. *Fuentes Rivera*, judgment of March 6, 1969.

If the death in this case had occurred as a direct consequence of the injuries inferred upon the deceased by defendants, there would be a ground to hold that the defendants acted upon a sudden heat of passion, but the evidence shows that the cause of the death was the injuries sustained when the automobile ran over the victim.[1] Therefore, the instruction as to misdemeanor did not lie.

The judgments appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein.

---

[1] As to whether the facts charged against appellants constitute the offense of murder, see 2 Cal. Jur.2d 508, § 20; 1 Wharton's Criminal Law & Procedure 448, § 200; *People* v. *Fowler*, 178 Cal. 657; *People* v. *Harrison*, 176 Cal. App.2d 33.