457 P.2d 281

Harold RODGERS, individually and on behalf of Steven Rodgers and Dennis Rodgers, his minor sons, Appellants,

v.

Clinton D. RAY and Carmella Ray, his wife, James W. Ray and Leah Ray, his wife, and County of Maricopa, a body politic of the State of Arizona, Appellees.

No. 1 CA–CIV 760.

Court of Appeals of Arizona.

July 3, 1969.

Rehearing Denied Sept. 5, 1969.
Review Denied Feb. 6, 1970.

**120**

Michael H. Lynn, Phoenix, for appellants.

Snell & Wilmer, by Roger W. Perry, Phoenix, for appellees Ray.

McKesson, Renaud & Cook, by J. Gordon Cook, Phoenix, for appellee Maricopa County.

MOLLOY, Chief Judge.

This is an appeal from a summary judgment in favor of the defendants in a personal injury action arising out of a two-car accident occurring at the intersection of two roads. The plaintiffs contend the intersection is "blind" and sue the defend-ants Ray as the owners of a farm upon which it is alleged there were obstructions to vision which prevented the drivers of the two cars in question from seeing one another until they converged at this intersection. The County of Maricopa is joined as a defendant in that the streets in question are located within its boundaries.

The Rays' acreage is at the southeast corner of Rambo and Higley Roads, in a rural area of Maricopa County. Their land was, at the time of this accident in September, 1961, being used for the farming of cotton. The roads in question came together at right angles at the northwest corner of this acreage. In 1955, the Rays had created a "tailings pond" in this northwest corner to conserve water runoff from their property, the natural drainage of the land being towards the northwest. Water collected in this pond was used for irrigation purposes. The pond was formed by earthen dikes built along both Rambo and Higley Roads for several hundred feet on both sides of this intersection. The embankments were, at the time of the accident, approximately eight feet above the natural level of the ground. According to the plaintiffs' complaint, the cars in question had paralleled these two dikes on their respective roads, each blocked from the other's view until immediately prior to entering the intersection.

The depositions which furnish the evidentiary basis for the summary judgment indicate that, at the time of this accident, neither Higley nor Rambo Road had been formally dedicated, but, by reason of long use by the public, were considered to be 66 feet in width, with 33 feet being that portion lying upon the defendants' land.[1]

I. In so regarding this road, reference is undoubtedly taken to the following statutory provision:
"§ 18–152.
"A. All highways constructed, laid out, opened or established prior to August 12, 1927 as public highways by the territory or state, or by a board of supervisors or legal subdivision of the state, and which have been used con-tinuously by the public as throughfares for free travel and passage for two years or more, regardless of any error, defect or omission in the proceeding to establish the highways, or in recording of the proceedings, and all highways established pursuant to law, are declared public highways sixty-six feet wide, unless the width thereof is otherwise specified."
7 A.R.S. § 18–152(A).

Plaintiffs take the position that these were both public roads. While there is some doubt in this state as to whether a public road can be established by mere use,[2] it is our view that there is sufficient evidence of a common-law dedication and acceptance here for these roads to pass muster as public roads, *see* Allied American Inv. Co. v. Pettit, 65 Ariz. 283, 290, 179 P.2d 437, 441 (1947), 23 Am.Jur.2d Dedication § 28, pp. 26–27, when attacked only by a motion for summary judgment.

There is no evidence in the record that the dikes constructed by the Rays were on a public right of way, though the testimony is that the embankment was constructed "[r]ight up against the 33 feet." On appeal, the appellants pose the question for review in such fashion as to impliedly admit that the embankment in question was entirely upon the private property of the defendants Ray.[3]

We first look at plaintiffs' suit against the defendants Ray to ascertain whether there was a genuine issue of fact so as to preclude summary judgment. Rule 56, R. Civ.P., 16 A.R.S. Theories of negligence and public nuisance are advanced to support the plaintiffs' claim.

█ As for negligence, there are three elements necessary for recovery:

" * * * (1) *there must exist a duty on the part of the defendant to protect the plaintiff from the injury of which he complains;* (2) the defendant must fail to perform that duty; and (3) an injury to the plaintiff must proximately result from such failure." (Emphasis added) Shafer v. Monte Mansfield Motors, 91 Ariz. 331, 333, 372 P.2d 333, 334–335 (1962).

It is our view that there is no duty upon the possessor or owner of land abutting public highways to refrain from using his land so as to obstruct a view across his property for those using the public highways. If there was allegation here that the obstructions had been created maliciously, for the express purpose of obstructing the view of travelers upon the highway, or even that the obstructions served no economic purpose, a more critical examination of the law would be necessary. But, here, we have the undisputed fact that the dikes in question served a legitimate farming purpose. If these property owners can be held liable for the obstructing of view across their land, then those who build skyscrapers on busy city streets should also be submitted to the same test, and we know of no such law.

█ Plaintiffs' contention appears to be sufficiently ingenious that we find few authorities specifically denying the right to recover for the obstructing of highway

2. In Tucson Consolidated Copper Co. v. Reese, 12 Ariz. 226, 228–229, 100 P. 777, 778–779 (1909), our Supreme Court said: "In the case of Territory v. Richardson, 8 Ariz. 336, 76 P. 456, we held that, under the provisions of our statutes on the subject of roads and highways, public highways are such only as come within the express provisions of the statute declaring them to be such, and *that roads established without authority of law,* for the convenience of individuals, *are without any legal status either as public highways or as private ways.*

\* \* \* \* \*

"We have no statute in this territory which recognizes that a public road or highway may be established by adverse user or by prescription." (Emphasis added)

While *Tucson Consolidated* has never been expressly overruled, County of Apache v. Udall, 38 Ariz. 488, 1 P.2d 340 (1931), which relied upon *Tucson Consolidated* in making a similar pronouncement to that quoted above (38 Ariz. at 492, 1 P. 2d 340), was overruled on its pronouncement by County of Maricopa v. Anderson, 81 Ariz. 339, 344, 306 P.2d 268, 271 (1957).

3. Question No. 2 posed as to the defendants Ray, at p. 8 of the opening brief, reads: "Was this duty breached by the Defendants RAY in their erection and maintenance of the dirt mounds or embankments *on their property* abutting these public roads, thereby causing the obstruction of view from the intersecting roads, resulting in a dangerous and hazardous highway on which the public traveled?" (Emphasis added)

view by a property owner. As pertinent as any case coming to our attention is Bohm v. Racette, 118 Kan. 670, 236 P. 811, 42 A.L.R. 571 (1925), in which the court, in a syllabus written by the court, said:

"An owner of land adjoining crossing highways, along which high hedges are permitted to grow so as to obstruct the view of those who at right angles approach the corner of the land at the intersection of the highways, is not liable in damage to those who are injured in an automobile collision on the crossing of the highways."

236 P. at 811.

In *Bohm*, it was accepted: "The hedge had not been trimmed as required by law." 236 P. at 812. Contrariwise, we know of no statute forbidding the construction complained of here.

██ This court recognizes, of course, that there may be liability for excavations or other artificial conditions so near to existing highways that the possessor should realize there is an unreasonable risk to others of being injured by *physical contact* with such artificial condition. *See* § 368, Restatement (Second) of Torts. We also recognize that there may be liability for placing obstructions upon the public right of way itself. *See* Beltran v. Stroud, 63 Ariz. 249, 160 P.2d 765 (1945). But we see a clear demarcation between such law and that advanced by these plaintiffs to support recovery.

The plaintiffs urge that these dikes constituted a violation of certain statutory provisions, and in this area of their brief, there is a blending of negligence and public nuisance theories. The first section relied upon is A.R.S. § 28-648 which reads as follows:

"A. No person shall place, maintain or display upon or in view of any highway any *unauthorized sign, signal, marking or device* which purports to be or is an imitation of or resembles an official traffic-control device or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any official traffic-control device or any railroad sign or signal, and no person shall place or maintain nor shall any public authority permit upon any highway *any traffic sign or signal* bearing thereon any commercial advertising. This shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful directional information and of a type that cannot be mistaken for official signs.

"B. Every such prohibited *sign, signal or marking* is declared to be a public nuisance and the authority having jurisdiction over the highway is empowered to remove the same or cause it to be remove without notice." (Emphasis added)

██ It is our view that these dikes as a matter of law do not constitute a sign, signal, marking or device. *See* Ashland v. Pacific Power & Light Co., 239 Or. 241, 395 P.2d 420, 397 P.2d 538 (1964).

██ The other statute relied upon is A.R.S. § 18-160, subsec. A(2) which reads, in pertinent part:

"A. A person who commits any of the following acts is guilty of a misdemeanor:

\*    \*    \*    \*    \*    \*

"2. Encroaches upon, obstructs, uses, occupies, damages or otherwise interferes with a public highway \*  \*  \*"

We can see no violation of this statute in this case. These words patently apply to physical obstructions on a public highway and are not intended to cover uses made of private property such as this.

██ As for a public nuisance, we are of the view that this theory of recovery

requires a showing of violation of some criminal statute or ordinance. *See* City of Phoenix v. Johnson, 51 Ariz. 115, 124, 75 P.2d 30, 34 (1938); and Prosser, Torts § 87, pp. 592, 594. Our public nuisance statute is phrased in broad terms:

> "Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by a considerable number of persons, or which unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, river, bay, stream, canal or basin, or any public park, square, street or highway, is a public nuisance, and is no less a nuisance because the extent of the annoyance or damage inflicted is unequal." A.R.S. § 13–601. flicted is unequal."

A.R.S. § 13–601.

■ Without law to restrict the sweep of this statute, we believe that it would fail due process tests. *See* State v. Cota, 99 Ariz. 233, 408 P.2d 23 (1965); State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964); State v. Bowling, 5 Ariz.App. 436, 427 P.2d 928 (1967). No law has come to our attention which would characterize an obstruction to view such as this to be a public nuisance. We hold that these dikes do not constitute a violation of the above-quoted criminal statute. There being no theory of recovery advanced by the plaintiffs which fits the undisputed facts of this case, we believe the trial court properly granted the motion of the defendants Ray for summary judgment.

Plaintiffs' principal contentions on appeal as to why the judgment in favor of Maricopa County was erroneous are that the County breached a duty "by allowing" the Rays to violate A.R.S. §§ 18–160, subsec. A(2) and 28–648 and "by allowing" the Rays to maintain a "public nuisance" upon their property.[4] Were these the only contentions on appeal, what we have already said would dispose of the appeal against Maricopa County as well. It is our view, expressed above, that, as a matter of law, the existence of these dikes did not constitute a violation of either A.R.S. § 18–160, subsec. A(2) or § 28–648 and that they did not constitute a public nuisance.

However, almost concealed within the verbiage of this Assignment of Error we find a contention by the plaintiffs that the County breached a duty by failing " * * to warn the public" of the "nuisance" created by these embankments. This enigmatic assertion is made more definitive by the authority cited in support of the contention.

Both in the lower court, and here, the plaintiffs rely, in part, upon the decision of Campbell v. City of Palm Springs, 218 Cal. App.2d 12, 32 Cal.Rptr. 164 (1963), which held, under the circumstances of that case, that the City of Palm Springs could be liable for an accident occurring at an intersection, when the converging streets were screened from one another by two rows of trees growing upon city-owned property. In *Campbell,* the court said, in part:

> " * * * that the view of defendant Ward was so blocked by said trees at the

4. The quotes are from Assignment of Error No. 2A, p. 13 of appellants' opening brief. The only other "Assignment of Error" directed at Maricopa County is No. 1, which contends that there were " * * * genuine issues of material fact * * * " which precluded summary judgment, but there is no specification as to what those issues might be. We consider this assignment to be an insufficient compliance with Rule 5(b) (7), as amended, Rules of the Supreme Court, 17 A.R.S., which requires that the questions presented for review be expressed in the " * * * terms and circumstances of the case * * * " The fact that the appellants have made assignments of error, rather than presented questions for review, as required by Rule 5(b) (7), is not, in our opinion, disqualifying.

intersection and the approaching Chevrolet driven by the defendant McGarrity was so concealed from the defendant Ward until he was in the place of danger, and such was a proximate cause of this accident, and that the condition created, constructed, maintained and operated by appellant City was a dangerous and defective condition, a traffic hazard to motorists using said intersection, and the combination of such factors then and there existing constituted a trap for travelers and the general public, and that the probable consequences thereof were readily foreseeable * * *"

32 Cal.Rptr. at 170.

In Rose v. Orange County, 94 Cal.App. 2d 688, 211 P.2d 45 (1949), the court allowed recovery against the public body on the theory that it had negligently failed to maintain a stop sign in place, which had been placed there by the public body, but which, at the time of the accident, was missing. The court said, in part:

"* * * it is rather well established that such a county or public agency has a duty to *warn* persons lawfully using its streets of a dangerous condition which exists, even if that condition was not created by it or consisted of something which was not within its control." (Emphasis added)

211 P.2d at 47.

These California decisions were rendered under California's Public Liability Act of 1923, which, at the time of these decisions, was codified as §§ 53050 and 53051 of the Government Code.[5] Under this Public Liability Act, the responsible government agency was made liable for a "* * * dangerous or defective condition of public property * * *" The Supreme Court of California has construed this language to include any situation which

"* * * involves an unreasonable risk of injury to the public." Teall v. City of Cudahy, 60 Cal.2d 431, 34 Cal.Rptr. 869–871, 386 P.2d 493 (1963). This language is not dissimilar to that quoted with approval by our Supreme Court in City of Phoenix v. Camfield, 97 Ariz. 316, 320, 400 P.2d 115, 118 (1965):

"'The requirements for recovery against a municipality for injury from a highway defect * * * are commonly as follows:

"'1. A condition of the highway which renders it unreasonably safe for ordinary travel, or for such other proper use * * * as is reasonable to be anticipated.' 2 Harper and James, The Law of Torts, 29.7, p. 1629."

Other courts have similarly reached the conclusion that there is a duty in the responsible public agency to warn of dangerous conditions in the highway. Wall v. American Employers Insurance Company, 215 So.2d 913 (La.App.1968); Hicks v. State, 4 N.Y.2d 1, 171 N.Y.S.2d 827, 148 N.E.2d 885 (1958); Moore v. City of Columbus, 139 N.E.2d 656, 74 Ohio Law Abst. 136 (1956).

Other courts, though recognizing that the maintenance of streets is a "proprietary" function as to which there can be liability, refuse to permit the recovery against the public body when it is a matter of failing to post or maintain traffic signs or signals. Urow v. District of Columbia, 114 U.S.App.D.C. 350, 316 F.2d 351 (1963); Locigno v. City of Chicago, 32 Ill.App.2d 412, 178 N.E.2d 124 (1961); Mullins v. County of Wayne, 4 Mich.App. 359, 144 N.W.2d 829 (1966); Owens v. Town of Booneville, 206 Miss. 345, 40 So.2d 158 (1949); Hammell v. City of Albuquerque, 63 N.M. 374, 320 P.2d 384 (1958); Belt v. City of Grand Forks, 68 N.W.

---

5. Since revised by Statutes 1963, Ch. 1681, the successor statutes being now included in Title I, Division 3.6, § 810 et seq., of the Government Code of California.

2d 114 (N.D.1955); Tolliver v. City of Newark, 145 Ohio St. 517, 62 N.E.2d 357, 161 A.L.R. 1391 (1945); Powell v. City of Nashville, 167 Tenn. 334, 69 S.W. 2d 894, 92 A.L.R. 1493 (1934); Bradshaw v. City of Seattle, 43 Wash.2d 766, 264 P.2d 265, 42 A.L.R.2d 800 (1953); and *see* 18 McQuillin, Municipal Corporations § 53.35, p. 231 (3d ed.); and Annot., 92 A.L.R. 1495.

That we are extremely close to a legislative function is self-evident. Statutes give to local authorities the power to place and maintain

"* * * such traffic-control devices upon highways under their jurisdiction as they deem necessary to indicate and to carry out the provisions of this chapter or local traffic ordinances or to regulate, warn or guide traffic."

A.R.S. § 28–643.

The placing of a traffic-control device in accordance with this power has the effect of determining the legality of the manner in which motor vehicles are operated in the area of such regulation:

"The driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto placed in accordance with the provisions of this chapter * * *"

A.R.S. § 28–644, subsec. A.

And *see* Salinas v. Kahn, 2 Ariz.App. 181, 192, 407 P.2d 120, 131 (1965).

In Massengill v. Yuma County, 9 Ariz. App. 281, 451 P.2d 639 (1969), this court had occasion to note that our Supreme Court, in its abrogation of governmental immunity, has not as yet carved out any area of immunity for the "discretionary" as opposed to the "ministerial" function. In *Massengill*, this court relied upon Stone v. Arizona Highway Commission, 93 Ariz.

384, 381 P.2d 107 (1963), Veach v. City of Phoenix, 102 Ariz. 195, 427 P.2d 335 (1967), and Patterson v. City of Phoenix, 103 Ariz. 64, 436 P.2d 613 (1968), to hold that a county could be liable for failing to exercise a duty to make an arrest for a traffic offense committed in the presence of a deputy sheriff. Our Supreme Court has granted review as to *Massengill* (April 15, 1969), and we refer to the opinion not as authority but only for such assistance as the opinion may be as explanatory of the result reached here.

We noted in *Massengill* that there is a close relationship between "judicial" immunity and "official" or "executive" immunity, and that, in this jurisdiction, the doctrine of "judicial" immunity still pertains, despite the abrogation of governmental immunity by *Stone*. Industrial Commission v. Superior Court, 5 Ariz.App. 100, 423 P.2d 375 (1967), *review denied*, March 21, 1967. It is difficult for this court to conceive that our Supreme Court will accord the legislative branch of our government no immunity in connection with its correlative governmental function.

▆ The matter with which we are concerned is one of determining whether there is a "duty," and this, in final analysis, is a policy decision. In the absence of a controlling statute or opinion of our Supreme Court, it is our view that there is no duty which will give rise to a liability for *failing* to exercise the legislative power to *regulate* traffic, by the posting of signs or otherwise. This view is in line with the result reached in California by court decisions such as Perry v. City of Santa Monica, 130 Cal.App.2d 370, 279 P.2d 92 (1955), which holds that there is no liability for failing to erect a stop sign at an intersection, and compatible with [6] Teall v. City of Cudahy, 60 Cal.2d 431, 34 Cal.Rptr. 869, 386 P.2d 493 (1963), which holds that,

---

6. We are not concerned with whether liability for affirmative conduct in exercising what we regard as essentially a legislative function is the law of this state, as in

*Teall.* In *Massengill*, we refused to draw a liability line between feasance and nonfeasance. 451 P.2d at 644–645.

while there is no duty to erect traffic-control signals, once the "* * * defendant undertook to control traffic at the intersection and invited reliance on the signals" established, it could be held liable if it "* * * created a dangerous or defective condition in doing so." 34 Cal.Rptr. 869, 386 P.2d at 495.

The court in *Teall* distinguished (34 Cal. Rptr. 869, 386 P.2d at 495) rather than overruled *Perry* and followed Dudum v. City of San Mateo, 167 Cal.App.2d 593, 334 P.2d 968 (1959), which stated:

"The rule is clear that a municipality is not liable for failure to install a boulevard stop sign [citation] or to direct traffic at an intersection [citation]. But once a stop sign is installed, the city's failure to maintain it properly (in the absence of determination that the protected street is no longer a through or arterial highway) creates an actionable condition of public property."

334 P.2d at 970.

■■■ Hence, we see no possibility of liability here for the failure of the defendant county to erect a stop sign either on Higley or Rambo Road. But there remains the question whether this was a dangerous intersection of which there should have been a proper warning sign posted. Lacking clear guide lines in our own state, and attempting to follow the spirit of decisions such as *Stone* and *Patterson,* we follow the cases previously cited herein which hold that there *is* a duty to warn of dangerous conditions in a public road. In State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1967), *review denied,* March 5, 1968, this court upheld a judgment against the State for failure to properly post warning signs as to a narrow bridge in the highway. It is our view that the injury inflicting potential of a narrow bridge is not so different from the danger that may be inherent in

a blind intersection that a difference between duty and non-duty should result.

However, we do not believe that the law requires a public body to warn of every danger, no matter how obvious. To do so would be to place an intolerable burden upon the agencies vested with authority over our public roads. Even the possessor of premises is not liable to business invitees for failure to warn of dangers that are as obvious to the person injured as to the possessor of the land. Daugherty v. Montgomery Ward, 102 Ariz. 267, 269, 428 P.2d 419, 421 (1967); and *see* Restatement (Second) of Torts § 343(A), particularly Comment on subsection (2) at page 222.

Whether there was an obvious danger here of a blind intersection is a matter which this record leaves in some doubt. Harold Rodgers, the driver of the plaintiffs' car, gave somewhat contradictory testimony in this regard:

"Q   Did you see anything to alert you to the fact that there was another car approaching that intersection before you saw the front end of it?

"A   I couldn't see anything. My vision was blinded on the right of me.

"Q   By what?

"A   An embankment.

"Q   Did you know the other road was there?

"A   *I knew the road was there.*

"Q   Did you know that back far enough away from the intersection so that you could have stopped before you got to the intersection?

"A   *I didn't know the embankment was there.*

"Q   *Did you know that the intersecting road was there in time that if you had wanted to you could have stopped at the intersecting road?*

"A   *No.*

"Q *When did you first appreciate the fact that there was in fact an intersection?*

"A *About the time I saw the car.*

"Q *Up till that time you didn't even know you were approaching the intersection?*

"A *No.*"

(Emphasis added)

On a motion for summary judgment, if there is " * * * the slightest doubt * * * " as to whether there is a bona fide issue of fact, the doubt should be resolved in favor of a trial on the merits. Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 362, 368 P.2d 317, 318 (1962). On a motion for summary judgment, the initial burden is upon the moving party to establish that there is no issue of material fact. Flynn v. Lindenfield, 6 Ariz.App. 459, 433 P.2d 639 (1967). There is no conclusive proof here that this particular intersection has not been regularly causing accidents, which would be substantial proof that the situation constituted a hidden trap, rather than a condition of obvious danger. *See* Slow Development Company v. Coulter, 88 Ariz. 122, 353 P.2d 890 (1960). It is our view that there is a reasonable doubt on the factual issue of whether this intersection constituted a hidden danger as to which there was a duty to warn and that summary judgment was erroneously entered for the defendant Maricopa County.

Judgment is affirmed as to all defendants except the defendant Maricopa County and as to this defendant, the judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.