495 P.2d 141

**Eileen SLAVIN, individually and as surviving spouse of Sidney Slavin, deceased, for the benefit of herself and children, et al., Appellants,**

**v.**

**The CITY OF TUCSON, a municipal corporation, et al., Appellees.**

**No. 2 CA–CIV 1082.**

Court of Appeals of Arizona,

Division 2.

March 30, 1972.

Rehearing Denied April 25, 1972.

Review Denied May 31, 1972.

Goldbaum & Goetz, by Richard H. Goetz and Norris L. Ganson, Tucson, for appellants.

Herbert E. Williams, Tucson City Atty., by Lesher & Scruggs, P. C., William E. Kimble, Sp. Counsel, Tucson, for appellee City of Tucson.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellees Giue.

HOWARD, Judge.

Appellant, the plaintiff below, sued appellees for wrongful death and personal injuries resulting from an automobile accident at an uncontrolled intersection in Tucson, Arizona. After plaintiff presented her evidence, the court granted appellees' motion for directed verdict. The parties will be hereinafter referred to as they appeared in the trial court.

On November 11, 1969, at about 10:00 a. m., plaintiff's decedent was driving south on Woodland Avenue. At the intersection of Woodland and Fourth Street his automobile was struck on the left side by an automobile going in a westerly direction and being operated by one Robert Lee Hill. Plaintiff's expert witness testified that at the time of impact the Hill automobile was going 36 to 40 miles per hour and that decedent's automobile was traveling at the rate of 25 to 30 miles per hour. He further testified that there were no skid marks prior to the time of impact. The speed limit in the area at the time was 25 miles per hour. The defendants Giue were the owners of a residence on the northeast corner of the intersection. Plaintiff's expert witness testified that at the time of the accident both drivers' visibility would have been obscured by a hedge growing on the Giue property and that at the speed the vehicles were going neither driver could have avoided the accident. He also testified that if both drivers had slowed to the speed of fifteen miles per hour prior to entering the intersection the accident could have been avoided.

There are no traffic control signs or warning signs at or near the intersection of East Fourth Street and North Woodland Avenue. At two intersections north of the one in question the City had previously installed "yield" signs.

Plaintiff's theory of liability against the City of Tucson is based upon a failure, by the City, to maintain its streets in a reasonably safe condition. Its theory against defendants Giue is based upon the allegation that the hedge on their property violated § 23–115, Tucson Code.

## THE LIABILITY OF THE CITY

It is plaintiff's theory that the obstruction of the visibility at the intersection constituted a condition of the highway which rendered it unsafe for ordinary travel and imposed liability on the City. In particular, the plaintiff claims that the City was negligent in failing to warn of a dangerous condition in its highway. While it is true that there is a duty upon the municipality to warn of dangerous conditions in a public road, City of Glendale v. Bradshaw, 16 Ariz.App. 348, 493 P.2d 515 (1972); Rodgers v. Ray, 10 Ariz.App. 119, 457 P.2d 281 (1969); State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1967), we do not perceive that such general statement of the law applies to the facts of the case *sub judice*.

■■ The determination of the liability of the municipality in a case involving the obstruction of view at an intersection must commence with the subject of the duty owed by the municipality to persons traveling on its streets. First, there is no duty on the city to maintain unobstructed-view intersections. McGough v. City of Edmonds, 1 Wash.App. 164, 460 P.2d 302 (1969); Barton v. King County, 18 Wash. 2d 573, 139 P.2d 1019 (1943). Second, there is no duty on the city to regulate traffic by posting signs or otherwise. Rodgers v. Ray, supra. Third, there is a duty to warn of dangerous conditions in a public road. City of Glendale v. Bradshaw, supra; Rodgers v. Ray, supra. Fourth, although there is no duty to regulate traffic by posting signs or otherwise, once the city undertakes to control traffic with signs or warning devices, it cannot create a dangerous condition in doing so, Teall v. City of Cudahy, 60 Cal.2d 431, 34 Cal.Rptr. 869, 386 P.2d 493 (1963); Hilts v. County of Solano, 265 Cal.App.2d 161, 71 Cal.Rptr. 275 (1968), and must properly maintain the signs. Dudum v. City of San Mateo, 167 Cal.App.2d 593, 334 P.2d 968 (1959).

Plaintiff in this case, relying on Rodgers v. Ray, supra, claims that the duty which should be imposed upon the City is the duty to warn of a dangerous condition in the road which existed by virtue of the obstructed view at the intersection. In Rodgers v. Ray, supra, this court did not hold that liability could be imposed upon the City in all cases involving obstructed-view intersections. Rather, we stated:

"However, we do not believe that the law requires a public body to warn of every danger, no matter how obvious. To do so would be to place an intolerable burden upon the agencies vested with authority over our public roads. Even the possessor of premises is not liable to business invitees for failure to warn of dangers that are as obvious to the person injured as to the possessor of the land. Daugherty v. Montgomery Ward, 102

Ariz. 267, 269, 428 P.2d 419, 421 (1967); and see Restatement (Second) of Torts § 343(A), particularly Comment on subsection (2) at page 222." 10 Ariz. App. at 126, 457 P.2d at 288.

Rodgers v. Ray, supra, was an appeal from a summary judgment. The record in that case indicated that the intersection in question was not merely an obstructed-view intersection but, instead, one at which it was impossible to tell that an intersection existed until one was already in the intersection. We held that under such circumstances the city could be held liable for failing to post a sign *warning of the existence of the intersection.* In the case at hand the testimony was clear and uncontradicted that one could tell that an intersection was there. The intersection only became dangerous if one did not obey the mandate of A.R.S. § 28–701, subsec. D, par. 1, which provides that the maximum lawful speed shall be reduced to that which is reasonable under the conditions, and actual and potential hazards then existing, such as when "approaching and crossing an intersection . . .", and A.R.S. § 28– 771, subsec. A which provides that when two vehicles enter or approach an intersection from different streets at approximately the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right. Had either vehicle in this case obeyed the law and slowed down when approaching the intersection until a clear view could be had of the intersection, the accident would not have occurred. The danger in this case was obvious.

■■ We are not persuaded by plaintiff's argument that the intersection constituted a "hidden trap" because two cars traveling at the legal speed limit would not have had any chance to avoid the collision and because of the fact that drivers would be lulled into a false sense of security by the fact that the two previous intersections were controlled by yield signs. The existence of speed limits does not authorize travelers on the street to blithely drive at

the maximum speed limit without regard to actual and potential hazards existing along the roadway. Such conduct would be in direct violation of A.R.S. § 28–701, subsec. D. Plaintiff's contention that the yield signs at the two previous intersections created a pattern which would lull a driver into a false sense of security is equally unpersuasive. Of the five intersections in the area, only two had yield signs. One approaching an intersection should always observe the intersection to determine whether or not it is controlled by yield signs or other traffic control devices. There was nothing obscuring the intersection in this case which would have prevented the decedent from observing that there was no yield sign.

We do not believe that the court erred in directing a verdict in favor of the City.

## THE LIABILITY OF THE LANDOWNER

The liability of the Giues depends upon an interpretation of § 23–115, Tucson Code, which provides as follows:

"Unless hereinafter excepted, in any district on any corner lot, no fence, structure, object, or planting, shall be erected or maintained within an area hereinafter designated at a corner so as to interfere with traffic visibility across the corner, except buildings as permitted in this chapter:

*Sec. 23–115(1).* That area lying within the *two street property lines* and a straight line connecting two points on the said lines twenty feet distant from their corner point of intersection.

*Sec. 23–115(2).* When the corner is described with a radius, the area lying within the *two street property lines* projected to a point and a straight line connecting two points on the said lines twenty feet distant from their projected point of intersection or a straight line connecting the tangent points (which is that point where the radial curve inter-

sects the property line), whichever is the greater. (1953 Code, Ch. 21, § 4; Ord. No. 2463, § 1, 5–6–63)." (Emphasis added)

In Hall v. Mertz, 14 Ariz.App. 24, 480 P.2d 361 (1971), this court held that violation of the above ordinance could constitute negligence per se. The dispute in this case revolves around the meaning of "the two street property lines." Plaintiff contends that the words mean those lines which delineate the private property of the Giues from the property set aside and dedicated as a street. Defendants Giue contend that the words refer to the curb lines of the street. If the plaintiff's contention is correct, the hedge violated the ordinance. If the contention of the defendants Giue is correct, the hedge was not in violation of the ordinance. Both parties have referred us to many cases and general statutory law defining the word "street". We need not turn to these definitions since § 23–32 of the Tucson Code defines "street" as follows:

" 'Street' means any public or private way thirty-one feet or more in width set aside as a permanent right-of-way for street purposes. . . ."

█ It is clear that the word "street" as defined by the Tucson Code means that area within the right-of-way whether it is open for public travel or not and does not mean, as contended by defendants Giue, the traveled portion of the street. Established case law supports this definition. *See* Gage v. City of Chicago, 223 Ill. 602, 79 N.E. 294 (1906); Yeomans v. Herrick, 178 Mo.App. 274, 165 S.W. 1112 (1914).

Since the City at any time can open up its street to the full width of its right-of-way, it makes only sense to us that the Tucson City Council would require, as set forth in its definition in the ordinance, that upon the opening of a street to its full width, there would not be the series of obstructions on corner lots which would occur if we accepted the Giues' contention.

We affirm the judgment of the trial court as to the City of Tucson and reverse the judgment entered in favor of the defendants Giue and against the plaintiff and remand the same to the trial court for a new trial.

KRUCKER, C. J., and HATHAWAY, J., concur.