573 P.2d 911

**LAKE HAVASU IRRIGATION AND DRAINAGE DISTRICT, a Municipal Corporation, Appellant,**

v.

**Samuel A. DUBOIS, Appellee.**

**No. 1 CA–CIV 3023.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 22, 1977.

Rehearing Denied Dec. 23, 1977.

Review Denied Jan. 17, 1978.

Gust, Rosenfeld, Divelbess & Henderson by James F. Henderson, Harold H. Swenson, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Westover, Richard McC. Shannon, Phoenix, for appellee.

## OPINION

SCHROEDER, Judge.

■ Lake Havasu Irrigation and Drainage District appeals from a judgment entered against it in the amount of $125,000 and in favor of the plaintiff appellee after a jury trial. The judgment was for injuries suffered in a collision which occurred at an intersection in Lake Havasu City, Arizona. The principal issue on appeal is whether Lake Havasu was entitled to a directed verdict because the evidence did not sufficiently establish that conditions at the intersection were dangerous, thereby giving rise to a duty on the appellant as maintainer of the streets, to post traffic control or warning signs.

The accident occurred on April 24, 1970, at approximately 11:00 a. m., in the intersection of Saratoga and Bluegrass Streets. The plaintiff was a passenger in the car driven by Billy Stapp, who was driving east on Saratoga at approximately 25 miles per hour. The other vehicle driven by Pamela Enhelder, was traveling north on Bluegrass at approximately 20 miles per hour. There was no stop sign posted for northbound traffic on Bluegrass, although there was a stop sign on the other side of the intersection for southbound traffic on Bluegrass. There was no sign of any kind warning either driver of the existence of the intersection. In fact, neither driver saw the other car until the collision in the intersection was imminent. Enhelder testified that she knew the intersection was there, looked both ways but did not see the Stapp car. Stapp testified that he did not know the

intersection was there and did not see the intersection.

Evidence further established that Saratoga was generally considered to be a through street, and that Bluegrass was a feeder street. Several other streets feeding into Saratoga were controlled by stop signs. Mr. Stapp testified that he believed that he was on a through street.

Evidence with respect to the physical conditions surrounding the intersection showed that there was a vacant lot at the corner, and that there was an arroyo on Saratoga approximately 225 feet before the intersection. Cars approaching the intersection on Bluegrass would not be able to see a car approaching the intersection on Saratoga while that car was in the arroyo. The driver approaching the intersection on Saratoga would, while in the arroyo, have a limited view of the traffic approaching on Bluegrass. Testimony from investigating officers, however, established that the intersection was visible from any direction for at least 100 feet.

The testimony of the experts was conflicting with respect to the degree of danger posed by the intersection. Appellant's expert testified that the intersection was not dangerous, that curbs had been installed and provided "[c]ontrast. and structural delineation of the presence of an intersection for an approaching motorist."

The plaintiff's expert, on the other hand, testified that in his opinion the intersection was a dangerous condition and that it should have been controlled. The reasons for his opinion included the fact that drivers on Saratoga would assume that the street was a through street, that the empty lot at the corner made the intersection difficult to perceive, and that the arroyo on Saratoga constituted a blind spot impeding the view of both drivers. These conditions are well illustrated by photographic exhibits in evidence, and these photographs also suggest that the striping on Saratoga may have continued into the intersection making the existence of the intersection even more difficult to discern. We conclude, on a review of the evidence in a light most favorable to upholding the jury verdict, that there was sufficient evidence to permit the jury to decide whether the appellant was negligent in failing to post signs directing northbound traffic of intersecting traffic.

■ The parties are in general agreement that the existence of an obstructed view of traffic at an intersection does not in and of itself give rise to liability. "[T]here is no duty of the city to maintain unobstructed-view intersections." *Slavin v. City of Tucson*, 17 Ariz.App. 16, 18, 495 P.2d 141, 143 (1972). Failure to regulate traffic "by posting signs or otherwise" at a given intersection does not in and of itself give rise to an actionable breach of duty. *Id. Rodgers v. Ray*, 10 Ariz.App. 119, 125, 457 P.2d 281, 287 (1969). In *Rodgers*, however, the court recognized that evidence of conditions impeding drivers' ability to perceive the existence of an intersection and of intersecting traffic creates a triable issue of fact with respect to whether the city breached a duty to warn of hidden dangers.

The parties here do not dispute that the appellant *for purposes of this litigation* should be considered as a municipal corporation. As such it has a duty to warn of dangerous conditions on public roads. *Rodgers v. Ray*, 10 Ariz.App. 119, 457 P.2d 281 (1969); *See also Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 381 P.2d 107 (1963), the landmark case in Arizona abolishing state governmental immunity for failure to maintain safe conditions on highways and reaffirming the prior Arizona Law that breaches of that duty by cities is actionable.

Appellant relies upon *Slavin v. City of Tucson, supra.* In *Slavin*, the court affirmed a directed verdict in favor of the city on the basis of uncontradicted evidence that the existence of the intersection was obvious, and the drivers failed to proceed with an appropriate vigilance and reduction of speed. The court rejected the contention that the existence of two yield signs controlling traffic at two preceding intersections constituted a hidden trap.

The evidence in this case supporting the plaintiff with respect to a dangerous condition is much stronger. Here not only were there more than two other intersections controlled by traffic signs, but the plaintiff's host driver testified that he believed that he was on a through street. There was expert testimony that the existence of the intersection was not obvious to drivers on Saratoga. The arroyo on Saratoga partially obscured both drivers' view of the intersecting traffic. This case is, therefore, distinguishable from *Slavin* and properly went to the jury.

For similar reasons, we reject appellant's additional claim that the court committed reversible error in refusing to give an instruction, based on the *Slavin* situation, focusing solely upon whether the drivers could have avoided the accident. There is no question that the jury was properly instructed with respect to proximate cause in order to take the actions of the drivers into account. Appellants' negligence "need not be the only cause of this accident." *State v. Watson*, 7 Ariz.App. 81, 85, 436 P.2d 175, 179 (1967).

Finally, appellant objects to the giving of an instruction which appellant claims permitted the jury to consider "custom and usage" of drivers on the streets to determine whether the appellant was negligent. The instruction itself is so unclear that it would not in our review have materially affected the jury's deliberation.[1] *See Bush v. State*, 19 Ariz. 195, 202–203, 168 P. 508, 511–512 (1917), holding an instruction non prejudicial because it was not understandable and was "a mere jingle of words." In any event, in this case there was evidence in the record that drivers normally thought of Saratoga as a through street. The Arizona Supreme Court has approved the admission of evidence of custom or practice so long as the practice does not conflict with a statutory standard of conduct. *American Smelting & Refining Co. v. Wusich*, 92 Ariz. 159, 375 P.2d 364 (1962). There is no conflict here. Appellant has cited no direct authority in support of its position. We believe that the jury was entitled to consider the relation of the appellant to the customs followed by the drivers using appellant's streets. We hold there was no error.

NELSON, J., concurs.

EUBANK, Judge, dissenting.

I dissent. In my opinion the trial court should have directed a verdict in appellant's favor because the evidence shows that both the drivers were careless in their driving and inattentive to road conditions when the accident occurred. Consequently, the appellant was under no duty to protect appellee from the injury he suffered.

Expanding the facts will demonstrate the basis for my conclusion. Billy Stapp testified that he had driven on Saratoga three times before the accident, that he did not know of the Blue Grass intersection, that he did not see it, and that he did not see the Enhelder vehicle until the accident occurred. He further testified that he looked neither to his right nor left upon reaching the intersection, and that he took no evasive action to avoid the collision.

Ms. Enhelder testified that she knew the intersection was there and looked both

---

1. The instruction is as follows:

    The jury has heard certain evidence relating to the custom, practice and usage of the highways involved in this case. With regard to this evidence, you are instructed that custom, usage and practice cannot change or overcome a statute contained in the motor vehicle code, nor will it excuse a person from responsibility for a careless act when the custom is unsafe or unreasonable.

    However, the jury has a right to consider common procedures and usages by drivers in determining whether other parties to this case used due care. Whether a driver follows an established custom or practice or whether he fails to do so are factors and circumstances which you may weigh and consider with all the other evidence in the case in determining whether or not the legal standard of ordinary care was exercised.

    Under these rules the evidence of custom and usage cannot be used to excuse the violation, if any, of the right of way statute by the defendant Stapp, but you should give such evidence such weight you deem it entitled upon the other issues of liability.

ways, but did not see the Stapp vehicle until the instant before impact. Deputy Sheriff Douglas Steele, the investigating officer who wrote the accident report, testified that the intersection was visible from any direction for at least 100 feet. Deputy Sheriff Robert Rathbone, another investigating officer, testified that the intersection was visible for at least 200 feet, and that when a vehicle is in the arroyo on Saratoga its driver would not totally lose sight of a vehicle traveling on Blue Grass.

Marshall Day, plaintiff's specialist on accident reconstruction, testified that the arroyo on Saratoga was approximately 225 feet from the intersection and that the driver of a vehicle in the arroyo would be unable to see an approaching vehicle on Blue Grass. He also testified that in his opinion the intersection was dangerous because it was unmarked and not readily apparent to the driver of a vehicle on Saratoga. He also stated, however, that the vehicles would not be totally obscured from each other the last 200 feet before the intersection, and that when the drivers on each street were within 100 feet of the intersection both would have a "clear view" of the other's vehicle. He went on to state that the drivers in the present case could have stopped within the last 100 feet had they been attentive.

The appellant's expert witness Derwyn Severy testified that the intersection was not dangerous. The curbs had been installed and they provided "contrast and structural delineation of the presence of an intersection for an approaching motorist." This is borne out by his photographs introduced into evidence. He admitted on cross-examination, however, that the center striping through an uncontrolled intersection constituted bad engineering practice.

All witnesses agreed that at 100 feet from the intersection each driver could clearly see the other. Neither party testified that they relied on the stop sign at the north side of Blue Grass to control traffic.

At the close of appellee's evidence on liability the appellant moved for a directed verdict, arguing that appellee had failed to prove actionable negligence. The court denied the motion for two reasons: (1) appellee's expert testified that the intersection was dangerous, and (2) appellant had assumed a duty to control traffic by erecting a stop sign for southbound traffic on Blue Grass.

Negligence is based upon the concept of fault. *Tucson Rapid Transit Co. v. Tocci*, 3 Ariz.App. 330, 414 P.2d 179 (1966). For actionable negligence to exist, three elements must be established: (1) Defendant must have had a duty to protect the plaintiff from the injury of which he complains; (2) The defendant must have failed to perform that duty; and (3) The harm to plaintiff must have proximately resulted from the failure. *See Boyle v. City of Phoenix*, 115 Ariz. 106, 563 P.2d 905 (1977); *City of Scottsdale v. Kokaska*, 17 Ariz.App. 120, 124, 495 P.2d 1327, 1331 (1972).

A municipality has no obligation to maintain unobstructed-view intersections. *Boyle v. City of Phoenix, supra; Slavin v. City of Tucson*, 17 Ariz.App. 16, 495 P.2d 141 (1972). Nor does it have a duty to regulate traffic at intersections by posting signs or traffic signals. *Rodgers v. Ray*, 10 Ariz.App. 119, 457 P.2d 281 (1969). It does have a duty, however, to warn of dangerous conditions on public roads. *Rodgers v. Ray, supra; State v. Watson*, 7 Ariz.App. 81, 436 P.2d 175 (1967). Further, once a municipality undertakes to control traffic at an intersection with signs or warning devices and invites reliance thereon, then it must do so non-negligently, taking care not to create a dangerous condition, and it must properly maintain the signs or warning devices which it erects. *Slavin v. City of Tucson, supra; Teall v. City of Cudahy*, 60 Cal.2d 431, 34 Cal.Rptr. 869, 386 P.2d 493 (1963).

The appellee, relying on *Rodgers v. Ray, supra*, contends that the Blue Grass-Saratoga intersection was dangerous because it was obscured by the arroyo and because no stop or warning sign was posted for northbound traffic on Blue Grass. Appellant, on the other hand argues that *Rodgers v. Ray, supra*, is not controlling here because *Rodgers* dealt with a blind intersection, and fur-

ther argues that *Slavin v. City of Tucson, supra*, is applicable. I think appellant's analysis of these cases is correct.

*Rodgers v. Ray, supra*, was an appeal from a summary judgment for the defendants in a negligence action arising out of a two-vehicle intersection collision. The plaintiff contended that Maricopa County breached its duty to warn of a dangerous condition on a public road by failing to warn of the existence of an intersection totally obscured by high embankments. The court, in reversing the summary judgment, agreed that a genuine issue of material fact existed precluding summary judgment, and stated that a "blind intersection" could constitute a hidden danger, which could give rise to a duty to warn of that danger, if facts of the existence of a hidden danger were established. The court's decision was based in part on *State v. Watson, supra*, where a judgment against the state for failure to warn of a suddenly appearing narrow bridge was affirmed.

To be distinguished from *Rodgers*, and *Watson, supra*, is *Slavin v. City of Tucson, supra*, in which a directed verdict for the city was affirmed in an action to recover for personal injuries and wrongful death arising from an automobile accident at an uncontrolled intersection. Testimony there revealed visibility was obscured by a hedge parallel to the roadway and that no warning signs were posted. The plaintiff relied on *Rodgers v. Ray, supra*. However the *Slavin* court distinguished *Rodgers*, stating:

> We held that under such circumstances the city would be liable for failing to post a sign *warning of the existence of the intersection*. [17 Ariz.App. at 18, 495 P.2d at 143].

The court in *Slavin* then stated that had either driver slowed down and looked, a clear view of the intersection would have been available. The court held therefore that the intersection did not constitute a "hidden trap" as in *Rodgers v. Ray* and that the directed verdict for the city had been proper.

After reviewing the facts and exhibits in the present case, I am not persuaded that the Blue Grass-Saratoga intersection constituted a "hidden trap." To the contrary, testimony indicated the intersection was visible and unobscured to such an extent that if either driver had been alert, within 100 feet of the intersection, the accident would most probably never have happened. Therefore, I would hold as a matter of law, the condition of the intersection did not give rise to a duty on the part of appellant to post signs warning of its existence. *See Slavin v. City of Tucson, supra*.

Appellee also contends that once appellant undertook to control traffic at the intersection by erecting a stop sign for southbound traffic on Blue Grass, it had a duty to complete the task by erecting a sign for northbound traffic and its failure to do so was negligent. In support of this contention appellee relies primarily upon *Teall v. City of Cudahy, supra*, which held that once a municipality undertakes to control traffic at an intersection and invites reliance on its controls, then it may be liable for damages if it creates a dangerous condition in doing so. The *Teall* court was not dealing with the situation where a municipality had failed to erect traffic controls but where they had. Further, *Teall* is inapplicable to this case since both drivers here testified they did not rely upon the stop sign at the north side of Blue Grass as controlling the intersection. Additionally, the intersecting roads involved in the accident were not controlled and therefore this argument is really academic.

It is my opinion that no duty existed under the facts set out above.