656 P.2d 890

Daniel Mark GRANO, Daniel J. Grano and Terry L. Grano, individually and as parents, and next friends, Plaintiffs-Appellees,

v.

ROADRUNNER TRUCKING, INC., a New Mexico Corporation, Harold H. Caruth, City of Albuquerque, a Municipal Corporation, Defendants,

and

State of New Mexico, Defendant-Appellant.

No. 5532.

Court of Appeals of New Mexico.

April 20, 1982.

Certiorari Quashed Jan. 19, 1983.

Kathryn Levy Civerolo, Hansen & Wolf, P.A., Albuquerque, for defendant-appellant State of N.M.

Charles W. Rawson, Albuquerque, for plaintiffs-appellees.

OPINION

HENDLEY, Judge.

Plaintiffs sued several defendants, including the State Highway Department, for damages arising out of an automobile accident. The State filed a motion for summary judgment claiming immunity. The motion was denied. We granted the State's request for an interlocutory appeal. The sole issue is whether the State is entitled to immunity under the Tort Claims Act. Our answer is in the negative and we affirm the trial court.

*Facts*

The accident in which plaintiff Mark Grano was injured occurred on the overpass at the intersection of Montgomery Boulevard and the northbound entrance ramp to I–25 in Albuquerque. There is no question that the overpass is a part of the Interstate highway. The plaintiffs' complaint alleged in part that the intersection was negligently designed, built, and maintained by the City of Albuquerque and/or State of New Mexico. The complaint also alleged the intersection is inherently dangerous to the public and the State should have corrected the defect or warned the public of it. The State filed a motion for summary judgment. In denying the motion, the trial court's order stated "that the State High-

way Department is not entitled to immunity under the Tort Claims Act of the State of New Mexico."

*Immunity*

Section 41–4–11, N.M.S.A.1978, provides:

*Liability; highways and streets.*

A. The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the maintenance of or for the existence of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

B. The liability for which immunity has been waived pursuant to Subsection A of this section shall not include liability for damages caused by:

(1) a defect in plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; or

(2) the failure to construct or reconstruct any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

The defendants contend that the negligence alleged by plaintiffs involves the design of the highway and the State is, therefore, immune. Defendants cite *Hammell v. City of Albuquerque,* 63 N.M. 374, 320 P.2d 384 (1958), as supporting their position. That case held that the failure of the City of Albuquerque to replace a stop sign that had been removed involved municipal discretion, which was a governmental function, and the City was, therefore, immune. However, "[t]he Tort Claims Act shall be read as abolishing all judicially-created categories such as 'governmental' or 'proprietary' functions and 'discretionary' or 'ministerial' acts previously used to determine immunity or liability." Section 41–4–2, N.M.S.A.1978. *Hammell* is not applicable.

We hold that the absence of traffic controls is a condition of a highway and is, therefore, the subject of maintenance. *See, Lake Havasu Irr. & Drain. Dist. v. DuBois,* 117 Ariz. 511, 573 P.2d 911 (Ct.App.

1977). We do so by using the ordinary meaning of maintenance. Webster's Third New International Dictionary, unabr., 1966, defines it generally as the care or upkeep of something. In the instant case, at the time of building the overpass, there was no need for a traffic control device at the place of the accident. The road ended with the overpass.

However, as time went on, the road extended beyond the overpass and on into Albuquerque. This, of course, increased the use of the overpass and the onramp. To meet this need, a certain amount of maintenance was necessary in order to keep the overpass safe for its users. This was not design work. There is no question as to design. It is a question of maintenance. Whether it was negligent maintenance is, of course, a factual issue.

Although not exactly on point, we feel that *Rickerson v. State of N.M. and City of Roswell,* 94 N.M. 473, 612 P.2d 703 (Ct.App. 1980), is instructive. There, this Court addressed the immunity question where traffic controls were at issue. In that case, the plaintiff argued that the defendants failed to install traffic control signals at an intersection which they knew was dangerous. This Court held that the State and City of Roswell were not immune because the section of the statute dealing with "negligent maintenance or existence of any highway, roadway, or street (*inadequate controls at the intersection*) . . . [is the] more specific" statute and must apply. (Emphasis added.) *See, O'Brien v. Middle Rio Grande, Etc.,* 94 N.M. 562, 613 P.2d 432 (Ct.App.1980).

Since the claimed vice is that there should have been traffic control devices at the intersection where the accident occurred, it is a question of negligence in the maintenance of the highway. The State is not immune from liability. Section 41–4–11(A), N.M.S.A.1978.

We affirm the trial court.

IT IS SO ORDERED.

WALTERS, C.J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (Specially concurring).

I concur in the result.

The majority opinion has taken the wrong course to a correct result. It states:

> We hold that the absence of traffic controls is a condition of a highway and is, therefore, the subject of maintenance.

I disagree. Section 41–4–11(A) deprives the State of immunity for negligence "in the maintenance of ... any ... highway ...." The word "highway" means a way over land open to the use of the general public, the part of a road over which vehicle traffic travels. *Moore v. State*, 95 N.M. 300, 621 P.2d 517 (Ct.App.1980). Maintenance of a highway means the upkeep of the surface of the highway. In *Moore*, guardrails were not "a condition" of a highway subject to maintenance. The omission of guardrails is related to negligence not maintenance. In the instant case, the omission of traffic controls, uncertain in meaning, equates with guardrails. "Maintenance" of a highway is not an issue. Thus far, the State is immune to liability for failure to maintain the highway.

Under § 41–4–11(A), an alternative to maintenance exists. Immunity does not apply when injury is caused by negligence "for the existence of any ... highway ...." Immunity is waived for a highway actually built. If plaintiff's injuries occurred on the highway but did not have traffic controls, a genuine issue of material fact exists with reference to negligence and proximate cause. *Moore, supra.*

The opinion further states:

> This was not design work. There is no question as to design.

The sole issue raised by the State is that the State was immune from liability in that the negligence alleged by plaintiff involves the plan or design of a highway. The State's claim should be answered. The majority refusing to do so, I decline.

At this juncture, it is important to correlate *Moore v. State, supra, Rickerson v. State of N.M. and City of Roswell*, 94 N.M. 473, 612 P.2d 703 (Ct.App.1980) and *O'Brien v. Middle Rio Grande, Etc.*, 94 N.M. 562, 613 P.2d 432 (Ct.App.1980). Principles of law can be established to govern the meaning of § 41–4–11 of the Tort Claims Act. Once we set a direct course in the meaning of the statute, these problems may not arise again. Concurring opinions are denied publication. The majority refusing to correlate these cases, I decline.